Raymond C. CLYBURN, Appellant,

v.

Togo D. WEST, Secretary of Veterans
Affairs, Appellee.

No. 97–1321.

United States Court of Appeals
for Veterans Claims.

April 2, 1999

Stephen L. Purcell, Washington, DC, was on the pleadings, for appellant.

John H. Thompson, Acting General Counsel; Ron Garvin, Assistant General Counsel; Joan E. Moriarity, Deputy Assistant General Counsel; and Darryl A. Joe, Washington, DC, were on brief, for appellee.

Before NEBEKER, Chief Judge, and STEINBERG and GREENE, Judges.

NEBEKER, Chief Judge:

The appellant, Raymond C. Clyburn, appeals an April 11, 1997, Board of Veterans' Appeals (Board or BVA) decision, which (1) denied entitlement to a compensable evaluation for his service-connected tinnitus; and (2) denied as not well grounded his claim for entitlement to service connection for a bilateral knee condition. For the following reasons the Court will vacate the Board's decision with respect to the tinnitus claim and remand that matter to the Board for readjudication consistent with this opinion, and will affirm the decision of the Board with respect to the knee claim.

## FACTS

Mr. Clyburn served on active duty in the U.S. Army from September 1960 to September 1963, and in the Persian Gulf, from November 1990 to June 1991, after his Army National Guard unit was ordered to active duty. Record (R.) at 13, 15. His entrance and separation physical examinations for his first period of service report no complaints of any knee problems or tinnitus. *See* R. at 17–20, 33–35, 37–38. Periodic physical examinations, conducted in 1963, 1980, and 1989, in connection with his service in the Arkansas Army National Guard, likewise make no mention of any knee disability or tinnitus (R. at 33–44, 51–54); however, a June 1980 examination notes "high freq[uency] hearing loss—artillery" (R. at 53–54, 61), and an October 1989 examination reports bilateral hearing loss and "morning leg stiffness and cramps" (R. at 43–44). *See also* R. at 39–42.

In an April 1991 medical examination performed prior to his release from active duty, the appellant was noted as having a high frequency bilateral hearing deficit, full range of motion without pain in his spine and legs, and the ability to stand on each foot alone but not on his right toes alone. R. at 77–78. At that time, the appellant complained of lower back pain from digging foxholes, and was referred for an orthopedics consultation. R. at 77–80. He filled out a medical evaluation questionnaire on April 21, 1991, and when asked, "What diseases or injuries did you have while in the Southwest Asia region," Mr. Clyburn again responded that he had hurt his back digging foxholes. R. at 87. On May 16, 1991, he signed a similar questionnaire, entitled "Chronological Record of Medical Care," in which his answer to the same question was that he had hurt his back digging foxholes, that the pain went down his right leg and increased on long rides, that he had a right leg limp, and that he was weak if on his toes. R. at 84.

A May 1991 orthopedic examination reported that Mr. Clyburn experienced pain in his lower back and down his right leg but that it had decreased since he had ceased riding in humvees, and a diagnosis of "lumbar degenerative disc disease" was made. R. at 76. The appellant again attributed his pain to digging foxholes in Saudi Arabia and to riding frequently in military vehicles while on active duty, but reported that the pain had decreased with the cessation of these activities. R. at 76, 80, 83–84, 86–87. Neither the April 1991 nor the May 1991 examination reports noted that the appellant specifically referenced a knee injury suffered or aggravated while on active duty. *Id.*

The appellant filed a disability compensation claim in September 1991 (R. at 113–16), indicating, inter alia, that his "knee prob-

lems" began in August 1991 (R. at 114). At a December 1991 VA medical examination, the appellant complained of "constant bilateral knee pain for many years," and "intermittent high-pitched tinnitus bilaterally." R. at 118. The relevant diagnoses were "chondromalacia patellae, bilateral" and "hearing loss with tinnitus." R. at 119. ("Chondromalacia [patellae]" is defined as "abnormal softness of cartilage [of the kneecaps.]" WEBSTER'S MEDICAL DESK DICTIONARY 119, [521] (1986).) In April 1992, based on his exposure to acoustic trauma in service and his indication of intermittent tinnitus at the December 1991 examination, the appellant was granted service connection for tinnitus with a noncompensable rating. R. at 128–29. Service connection for the knee claim was denied; the VA regional office (RO) found that the appellant's service medical records (SMRs) did not reveal any in-service complaints of, treatment for, or diagnosis of, a knee condition. *Id.*

At an August 1992 VA regional office hearing, the appellant testified that he had "really messed [his knees] up" in the Persian Gulf as a result of carrying heavy equipment across sand for several hours each day, and riding at length in military vehicles. R. at 149. He testified that while in Saudi Arabia and Kuwait his knees "swelled up like balloons" (*Id.*), that he wrapped them daily in ace bandages and sought treatment from his battalion surgeon, Lieutenant Colonel (Lt.Col.) Sessler, and that he continued to experience discomfort ninety percent of the time (R. at 149–50). In response to a question of whether he had experienced any problems with his knees prior to going to the Middle East, Mr. Clyburn responded:

I've had slight problems occasionally. Now, everybody has trouble with their knees sooner or later. You get a twinge in them or something but I didn't have a constant problem. Once in a great while, one of my knees you'd go well that's a little tender. After I got over there in the desert and got to tromping through the sand, I had real problems.

R. at 152. He also stated that he believed that his knees were discussed and examined upon his release from active duty, but im-

plied that the examiner rushed through the examination in a less than complete manner. R. 151–52. Regarding his tinnitus, he testified that he experienced "constant high ringing" in his ears. R. at 153.

At the hearing, the appellant also submitted: (1) a prepared statement from Lt. Col. Sessler, who recounted that he was the battalion surgeon during Mr. Clyburn's deployment to Desert Shield/Storm, and that he had treated the appellant in the Middle East for, inter alia, pain and swelling of his knees (R. at 161); and (2) written statements from three of the appellant's fellow servicemen in the Persian Gulf who knew of the appellant's knee pain and had observed him wrap his knees on numerous occasions (R. at 162–64).

In October 1992, the hearing officer's decision continued both the denial of a compensable rating for tinnitus and the denial of service connection for the bilateral knee condition. R. at 177–78. With respect to the tinnitus claim, the hearing officer noted:

The veteran's personal testimony concerning his constant tinnitus is contradicted by his recorded statement alleging intermittent tinnitus on his [December 1991] VA examination. As the evidence of record is at variance concerning the persistence of the veteran's service[-]connected tinnitus, basis for entitlement to a compensable evaluation is not found at this time.

R. at 178. As to the knee condition, the hearing officer found that while the condition may have undergone acute exacerbation during his Persian Gulf service, the current condition was "essentially unchanged" from that present prior to his entry on active duty. *Id.*

During a March 1993 VA "Persian Gulf examination," a radiographic report of the appellant's knees reported "no significant bone, joint, or soft tissue abnormality," and rendered an impression of "normal view both knees." R. at 210. An examination notation made on the same date indicated "both knees swelled up—began after one week [in the Persian Gulf] and still has [illegible] problem." R. at 216. The appellant reported to the examiner that a VA compensation and pension examiner had told him that his "knees [are] worn out and [that he] has no cartilage left." *Id.; see also* R. at 151. In a

January 1996 VA examination of his joints, in connection with his newly submitted claim for "[Persian] Gulf War Syndrome" (R. at 247), the appellant was diagnosed with degenerative joint disease of multiple joints, including his knees (R. at 286).

On April 11, 1997, the BVA issued its decision here on appeal, denying an increased rating for the appellant's noncompensable service-connected tinnitus and denying the knee claim. In addressing the tinnitus claim, the Board noted in its findings of fact that "[a] medical examiner has not documented persistent tinnitus." R. at 3. The Board further pointed out that "[d]uring the veteran's most recent examination, the examiner specifically noted that the veteran's tinnitus was intermittent and not persistent." R. at 6–7. With respect to the knee claim, the Board made four specific findings of fact: (1) that Mr. Clyburn's degenerative arthritis of the knees existed prior to his Persian Gulf service; (2) that his SMRs were negative for reports of injuries to the knees; (3) that medical evidence of aggravation of a preexisting bilateral knee disability had not been presented; and (4) that Mr. Clyburn had not presented medical evidence linking his present knee condition to service. R. at 4. The Board then found that the statement of Lt. Col. Sessler, that while in the Persian Gulf he had treated the appellant for pain and swelling of the knees, did "not substantiate the veteran's claim that his knee condition either began or was aggravated by his military service." R. at 5. The Board went on to find that Mr. Clyburn's SMRs did not verify his contention that he had a preexisting condition. *Id.* Finally, the Board found that the veteran's postservice medical records also failed to corroborate the claim for aggravation, stating: "[T]here is no evidence[, other than his own statements,] showing a link between the appellant's claimed condition and his military service." *Id.*

## ANALYSIS

### A. Tinnitus

The appellant states that 38 C.F.R. § 4.87a, Diagnostic Code (DC) 6260 (1998), assigns a 10% rating for tinnitus which is "persistent as a symptom of ... acoustic trauma," and that tinnitus is a subjective disorder, as evidenced by the cross reference in DC 6260 to 38 C.F.R. § 4.124a, DC 8046 (1998), which lists tinnitus as a "purely subjective complaint[ ]." The appellant argues, therefore, that because he testified at the 1992 hearing that he experienced "constant high ringing" in his ears, the BVA's refusal to grant a compensable rating was clear error, that reversal is appropriate, and that he is entitled to a compensable rating.

The Secretary responds that although remand of this claim is warranted, reversal is not. The Secretary argues that DC 8046 is inapplicable to this case because it applies only to a claimant suffering tinnitus "symptomatic of a properly diagnosed cerebral arteriosclerosis." 38 C.F.R. § 4.124a, DC 8046. In evaluating this claim only under DC 6260, the Secretary argues that remand is appropriate because the Board, in its determination of whether the appellant's tinnitus was persistent, referred only to the December 1991 examiner's report of "intermittent high pitched tinnitus bilateral," and failed to consider and weigh the appellant's August 1992 testimony of "constant high ringing."

The BVA's determinations regarding the degree of impairment of a disability, for purposes of rating, are findings of fact, reviewed under the "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *see Francisco v. Brown,* 7 Vet.App. 55, 57–58 (1994). In adjudicating a claim for VA benefits, the Board is required to base its decision "upon consideration of all evidence and material of record" and to consider all "applicable provisions of law and regulation." 38 U.S.C. § 7104(a); 38 C.F.R. § 3.303(a) (1998). The Board must further provide an adequate statement of the reasons or bases for its decision, analyzing the credibility and probative value of the evidence, accounting for the evidence that it finds persuasive or unpersuasive, and providing reasons for its rejection of any material evidence favorable to the veteran. *See* 38 U.S.C. § 7104(d)(1); *Gabrielson v. Brown,* 7 Vet.App. 36, 39–40 (1994); *Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57 (1990).

■ In its findings of fact, the Board stated: "A medical expert has not documented persistent tinnitus," (R. at 3) and then relied on the December 1991 report of intermittent tinnitus for its denial of the claim for increase (R. at 6–7). Because there is inconsistent evidence in the record with respect to whether or not the appellant's tinnitus is "persistent" and because the Board failed to provide an adequate statement of reasons or bases when it rejected or failed to consider the appellant's favorable hearing testimony, remand of the tinnitus claim is necessary. *See Ashley v. Brown,* 6 Vet.App. 52, 56 (1993) (BVA must consider sworn testimony of claimant); *Gilbert,* 1 Vet.App. at 57 (remand is appropriate remedy if Board fails to provide adequate statement of reasons or bases for decision).

■ The appellant's argument, that DC 6260, when considered with DC 8046, dictates an automatic 10% rating in a case such as this where the veteran has claimed constant or persistent tinnitus, is unpersuasive. Diagnostic code 6260 says only, "See [DC] 8046." This reference implies that DC 8046 may, in some circumstances, be a relevant provision in a particular benefits determination involving tinnitus. However, upon examination of DC 8046, it is apparent that this provision deals only with "diagnosed cerebral arteriosclerosis," and is therefore not appropriately considered in a claim, such as is before us, involving tinnitus attributable solely to acoustic trauma. *Cf. Payne v. Derwinski,* 1 Vet.App. 85, 87 (1990) (BVA must consider all *applicable* regulations).

Likewise, the appellant is also unconvincing in his argument that, because the most recent evidence regarding the nature of his tinnitus is his testimony of "constant high ringing," reversal and a 10% rating by this Court are, therefore, necessary and automatic. Although the Court is mindful that in a claim for an increase in rating the most recent evaluation of level of disability is of primary concern, *see Francisco,* 7 Vet.App. at 58, the Board must base its decision on *all* of the evidence of record, and is assigned the task of making credibility determinations. *See Gilbert, supra.* In a case such as this one, where the two pieces of evidence relevant to degree of impairment are statements that were made only eight months apart and that conflict, it is the function of the Board, not the Court, to make a determination on this factual matter. *See Gabrielson,* 7 Vet. App. at 40. If the Board's determination is supported by a plausible basis in the record, it will be upheld. *See Salong v. Brown,* 7 Vet.App. 130, 133 (1994); 38 U.S.C. § 7261(a)(4).

B. Knee Condition

The appellant contends that the record contains evidence of a current diagnosis, service incurrence, and medical nexus between the two, and thus presents a well-grounded claim for service connection for his bilateral knee disability. Further, the appellant maintains that the BVA committed error warranting remand when it failed to consider and discuss 38 U.S.C. § 1154(b), regarding reduced evidentiary requirements for service connection for combat veterans. Finally, the appellant argues that the Board erroneously addressed his knee claim as one for aggravation of a preexisting condition, and in doing so failed to discuss 38 U.S.C. § 1111, the presumption of soundness, or, in the alternative, applicable VA regulations relating to aggravation of preservice disabilities. Although these arguments each merit discussion, the Court concludes that any errors by the Board were not prejudicial to the appellant, and that the Board decision on this matter must· be affirmed, because a well-grounded claim has not been presented.

■ An appellant has the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that his claim is plausible. *See* 38 U.S.C. § 5107(a); *Carbino v. Gober,* 10 Vet.App. 507 (1997). "Such a claim need not be conclusive but only possible to satisfy the initial burden of § [5107(a) ]." *Murphy v. Derwinski,* 1 Vet. App. 78, 81 (1990). A well-grounded claim generally requires: (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of occurrence or aggravation of a disease or injury in service; and (3) medical evidence of a nexus between the in-service injury or disease and the current disability. *See Caluza v. Brown,* 7 Vet. App. 498, 506 (1995), *aff'd,* 78 F.3d 604 (Fed.

Cir.1996) (table); *see also Epps v. Brown,* 9 Vet.App. 341 (1996), *aff'd,* 126 F.3d 1464 (Fed.Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 2348, 141 L.Ed.2d 718 (1998). Where the determinative issue involves either medical etiology or medical diagnosis, competent medical evidence is required to well ground the claim. *See Caluza,* 7 Vet. App. at 506. In determining whether a claim is well grounded, the evidence in support of the claim is presumed truthful. *See Robinette v. Brown,* 8 Vet.App. 69, 74–75 (1995). The determination whether a claim is well grounded is subject to de novo review by the Court under 38 U.S.C. § 7261(a)(1). *See Grottveit v. Brown,* 5 Vet.App. 91, 92 (1993).

■■■ The Secretary concedes that the appellant has satisfied the first two *Caluza* elements, having presented evidence of both a current diagnosis and in-service incurrence. Secretary's Brief at 11. The Court agrees. The Secretary argues, however, that the Board decision should be affirmed because the record does not contain evidence establishing a nexus between the appellant's current bilateral knee disability and his active military service. The appellant argues that he has submitted a plausible, well-grounded claim, and asserts under *Falzone v. Brown,* 8 Vet.App. 398 (1995), and *Hampton v. Gober,* 10 Vet.App. 481 (1997), that his continued complaints of knee pain since service, coupled with his diagnosis of chondromalacia patellae just six months after his discharge, are sufficient to satisfy the nexus prong of the *Caluza* test.

Mr. Clyburn's reliance on *Falzone* is misplaced. In that case, the veteran was attempting to reopen a denial of his claim for service connection for flat feet based on aggravation of a preexisting condition. 8 Vet. App. at 400–01. His claim was denied by both the RO and the BVA based on an absence of evidence of aggravation and continuity of symptomatology. *Id.* at 401, 403. This Court vacated the Board's decision and remanded the matter, noting that Mr. Falzone's statements of continuity of pain since service, in relation to his flat feet, were competent, because they related to an observable condition, and new and material, because they addressed the determinative issue of continuity of symptomatology. *Id.* at 403. In finding that the veteran's statements provided "a direct link between [his] active service and the current state of his claim," the Court noted that "pes planus is the type of condition that lends itself to observation by a lay witness," and that when the issue is one of continuity of symptomatology, lay testimony may suffice to reopen a claim. *Id.* In rejecting the Secretary's argument that Mr. Falzone's claim should fail because he had not submitted medical statements linking his current condition with his in-service condition, the *Falzone* Court stated that the nature of the evidence required depends upon the type of condition involved, and "where the determinative issue does not require medical expertise, lay testimony may suffice by itself." *Id.* at 405 (quoting *Heuer v. Brown,* 7 Vet.App. 379, 384 (1995)). The *Falzone* Court held that since the determinative issue was not "medical in nature" (*id.* at 406), the veteran's statements were competent as to the issues of pain since service and the observable flatness of his feet. *Id.*

The present case does not present an issue that may be satisfied by lay testimony. The issue at hand is one of etiology, and there is no medical evidence that Mr. Clyburn's current condition, be it chondromalacia patellae or degenerative joint disease, is the same condition or related to the knee problems he experienced while on active duty. *See Savage v. Gober,* 10 Vet.App. 488, 494 (1997) (veteran not competent to provide medical opinion linking present arthritis to in-service fall); *Grottveit,* 5 Vet.App. at 93 ("lay assertions of medical causation cannot constitute evidence to render a claim well grounded under section 5107(a)"). Because this issue is one requiring medical expertise and on the present record there is no competent medical evidence relating the current condition to service, the appellant has not submitted a well-grounded claim. *See Caluza,* 7 Vet.App. at 504. Although the veteran is competent to testify to the pain he has experienced since his tour in the Persian Gulf, he is not competent to testify to the fact that what he experienced in service and since service is the same condition he is currently diagnosed with. See *Layno v. Brown,* 6 Vet.App. 465, 470 (1994) ("Lay testimony is competent only

when it regards the features or symptoms of an injury or illness. . . . Should [it] begin to address, for example, medical causation, that portion of the testimony addressing the issue of medical causation is not competent."); *see also Ross v. Derwinski,* 3 Vet.App. 141 (1992) (veteran's unsupported allegation that loss of vision was result of VA hospital surgery insufficient to well ground his claim). The lack of a competent medical opinion correlating the symptoms he suffered in-service to his current diagnosis is fatal to Mr. Clyburn's presentation of a well-grounded claim on this theory.

The appellant's case, contrary to his assertion, is likewise not supported by *Hampton, supra.* In *Hampton,* the Court held that the veteran had presented a well-grounded claim for service connection for a knee condition when the evidence of record showed in-service treatment for knee problems, a diagnosis of a knee condition on his separation examination, and a claim filed one month following discharge, despite the fact that a medical examination performed one month after the claim was filed was silent as to a knee condition. 10 Vet.App. at 482. The *Hampton* Court rejected the BVA's conclusion that the absence of reference to the condition at the veteran's post-application examination negated well groundedness as to a current disability related to service. *Id.* Instead, the Court held that the evidence was sufficient to conclude that the current knee condition "may be" linked to service and was therefore well grounded. *Id.* The Court held expressly that "the diagnosis of a bilateral knee condition contained in the separation examination report provides evidence of both a current left knee condition and a relationship to service" that was adequate to well ground the claim. *Id.* The Court held that the postclaim examination, which was silent as to a knee condition, could not, in essence, serve to render implausible the claim that the Court had just found plausible. *Id.* Although the effect of the silent postclaim examination could certainly be considered in the merits adjudication, it could not serve to "un-well-ground" the claim. *Id.; see also Arms v. West,* 12 Vet.App. 188, 195 (1999) ("only the evidence in support of the claim is to be

considered" in determining well groundedness).

Whereas in *Hampton,* where the Court found a well-grounded claim and then denied the Secretary's request to find it not plausible because of additional evidence, on the record before us here, there is simply not adequate evidence of nexus to permit us to find a well-grounded claim in the first place. Even were this claim to have been filed one month after separation, as in *Hampton,* rather than three, the fact that there is no competent evidence linking the veteran's present condition to service precludes that Court from holding that a well-grounded claim has been submitted.

The Court notes that the second and third *Caluza* elements may also be satisfied under 38 C.F.R. § 3.303(b) (1998), by the submission of (a) evidence that a condition was "noted" during service or during an applicable presumption period; (b) evidence showing postservice continuity of symptomatology; and (c) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the postservice symptomatology. *See Arms,* 12 Vet.App. at 193; *Savage,* 10 Vet.App. at 495–97. However, even under this regulation, medical evidence is required to demonstrate a relationship between a present disability and the continuity of symptomatology demonstrated if the condition is not one where a lay person's observations would be competent. *See Savage, supra.* As discussed above, because Mr. Clyburn is not competent to testify that the condition he is diagnosed with presently is the same as any condition he suffered while in service and since separation, section 3.303(b) cannot serve to assist him in the submission of a plausible claim. *See Ruiz v. Gober,* 10 Vet.App. 352, 356 (1997); *Grottveit, supra; Espiritu v. Derwinski,* 2 Vet. App. 492, 494 (1992). Although the Court is mindful that the threshold for submission of a well-grounded claim is rather low, *see Hernandez–Toyens v. West,* 11 Vet.App. 379, 382 (1998); *White v. Derwinski,* 1 Vet. App. 519, 521 (1991), Mr. Clyburn's claim is of the nature that requires medical nexus evidence, and without such evidence his claim cannot be well grounded.

Further, the Court finds that any failure by the Board to consider 38 U.S.C. § 1154(b) is, at most, nonprejudicial error. *See* 38 U.S.C. § 7261(b); *Winters v. West,* 12 Vet.App. 203, 207–08 (1999) (en banc). Section 1154(b) specifically allows combat veterans, in certain circumstances, to use lay evidence to establish incurrence in service of a disease or injury, by relaxing the evidentiary requirements for adjudication of certain combat-related VA disability compensation claims. *See Caluza,* 7 Vet.App. at 507; *see also Jensen v. Brown,* 19 F.3d 1413, 1416–17 (Fed.Cir.1994); *Chipego v. Brown,* 4 Vet. App. 102, 105 (1993). However, the provisions of section 1154(b) do not provide a substitute for medical-nexus evidence, but rather serve only to reduce the evidentiary burden for combat veterans with respect to the second *Caluza* requirement, the submission of evidence of incurrence or aggravation of an injury or disease in service. *See Arms,* 12 Vet.App. at 194; *Wade v. West,* 11 Vet. App. 302, 305 (1998); *Brock v. Brown,* 10 Vet.App. 155, 162 (1997). Because the Secretary concedes and the Court holds that Mr. Clyburn has satisfied this prong of the well-groundedness test, the BVA's failure to consider section 1154(b) cannot be said to be prejudicial. *See Winters, supra.* The Court notes that if there were a dispute in this case about the in-service incurrence of knee problems, then our recent opinion in *Arms,* 12 Vet.App. at 197–98, would require careful scrutiny of the Board's use (R. at 5) of the absence of reference to such problems in the veteran's service medical records to rebut the veteran's lay and medical evidence of the existence of such problems having arisen during his combat service in the Persian Gulf.

With respect to the appellant's argument that remand is required because of the Board's: (1) adjudication of this claim as one for aggravation; (2) subsequent failure to consider relevant regulations relating to aggravation claims; and (3) failure to discuss the presumption of soundness, the Court holds that any error by the BVA in this regard was likewise nonprejudicial. *See Winters, supra.* The Secretary concedes that this is not a claim for aggravation of a preexisting condition and that the veteran's knees should be considered to have been in sound condition upon his being called to active duty in 1990. Secretary's Brief at 11. Accordingly, the analysis of Mr. Clyburn's claim must focus on whether, as a veteran presumed to be in sound condition prior to his tour of duty in the Persian Gulf, he now suffers from a disability that was incurred during service. As concluded above, the appellant has not presented a well-grounded claim for service connection for a bilateral knee disability, and therefore remand based on possible Board errors with respect to the presumptions of aggravation and soundness would be a useless act. *See Winters, supra.*

Accordingly, in light of the foregoing discussion, the Court holds, on de novo review, that the appellant's claim for service connection for a bilateral knee condition is not well grounded. *See Epps, Robinette, Caluza, and Grottveit, all supra.*

## CONCLUSION

Upon consideration of the record and the submissions of the parties, the April 11, 1997, decision of the Board of Veterans' Appeals is VACATED in part, with respect to the appellant's claim for an increased rating for his service connected tinnitus, and this matter is REMANDED for readjudication, and the decision of the Board is AFFIRMED in part, as to the denial of the appellant's claim for service connection for a bilateral knee condition. On remand the Board shall readjudicate the tinnitus claim, account for the evidence, new or of record; that it finds to be persuasive or unpersuasive, *see Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992), and provide adequate reasons or bases for rejecting, if it does, evidence and arguments submitted by or on behalf of the veteran. *See Gilbert, supra;* 38 U.S.C. §§ 5107, 7104(a), (d)(1).