**This version includes an errata dated 12Apr00 - e**

## UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 98-1275

WILLIAM L. HODGES, APPELLANT,

V.

TOGO D. WEST, JR.
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided  January 12, 2000   )

*Michael E. Wildhaber* was on the briefs for the appellant.

*Leigh A. Bradley,* General Counsel; *Ron Garvin*, Assistant General Counsel; *Mary Ann Flynn*, Acting Deputy Assistant General Counsel; and *Gregory W. Fortsch* were on the brief for the appellee.

Before HOLDAWAY, IVERS, and STEINBERG, *Judges*.

STEINBERG, *Judge*: The appellant, veteran William L. Hodges, appeals through counsel a March 19, 1998, Board of Veterans' Appeals (BVA or Board) decision that denied as not well grounded claims for Department of Veterans Affairs (VA) service connection for a right-knee disorder, a left-knee disorder, and a stomach disorder.  Record (R.) at 3.  The appellant has filed a brief and a reply brief, and the Secretary has filed a brief.  This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).  For the reasons that follow, the Court will affirm the BVA decision in part and reverse it in part and remand a matter.

1

## I. Background

The veteran served on active duty in the U.S. Marine Corps from January 1968 to January 1972 and in the U.S. Air Force from November 1980 to June 1992. R. at 396, 398. From April 1977 to November 1980, he served in the U.S. Air Force Reserves. *See* R. at 55-118 (reserve service medical records (RSMRs) of, inter alia, annual physicals for reserve service).

A July 1970 service medical record (SMR), contained the following description, written by the veteran, of his "present health": "O.K. Except l[e]f[t] knee continually hurt." R. at 31. The veteran elaborated: "Hurt knee in boot camp 2 ½ years. Doctor has not been able to find cause. Slips when excessive running, or when sitting such as in backseat of car for more than 20 to 30 minutes." R. at 32. Physical examination of the left knee revealed tenderness and swelling of the distal patella. *Ibid.* A few days later, the veteran was again examined based on a complaint of left-knee pain, and the physician noted a "strong knee capsule [with] full ROM [(range of motion),] tenderness and swelling distal patella." R. at 30. Subsequent x-rays were negative, and a follow-up examination SMR noted that the veteran had a "[s]table knee". *Ibid.* At his January 1972 separation examination, he reported that he had hurt his knee in boot camp. R. at 53.

The records of his April 1977 medical examination for enlistment in the Air Force Reserves, as well as RSMRs dated in January and September 1978, October 1979, and October 1980, indicated that the veteran had reported that he had never had a "'trick' or locked knee" and reported no knee complaints. R. at 57, 65-72, 75-81, 92-96. In January 1984, SMRs reflected that he was treated for symptoms of abdominal pain that he described as being due to a "nervous stomach" (R. at 154); on the day after he was examined, the veteran reported that his abdominal pain had resolved (R. at 153). He was ultimately diagnosed as having a "viral syndrome." R. at 159. A July 1988 SMR indicated that he had strained the medial collateral ligament of his left knee while playing softball. R. at 231-33. The examiner noted tenderness of the knee but found no swelling, effusion, or crepitation, and placed the veteran in a limited activity profile for one week. R. at 231-33.

At a September 1990 Air Force medical examination, the veteran gave a history of having experienced "stomach problems . . . on and off" since exposure to Agent Orange in Vietnam; his symptoms were described as an ache in the epigastric area with occasional cramping of the stomach. R. at 371. The examiner's assessment was "irritable bowel syndrome, [d]oubt inflammatory bowel

disease [(IBS)]; [d]oubt PUD [(peptic ulcer disease)], [d]oubt esophagitis." *Id.* In November 1990, the veteran was seen for complaints of diarrhea and vomiting, and was diagnosed as having gastroenteritis. R. at 309. The next report of any pertinent condition was a May 1992 SMR, which reported that the veteran had complained of a sharp mid-epigastric pain that radiated through to his back. R. at 393. He reported having had multiple prior episodes of such pain, and having been previously prescribed Librax for a "nervous stomach." *Id.* The examiner assessed: "? IBS/ R/O (rule out) pancreatitis, PUD". *Id.*

Following his June 1992 retirement from active duty, the veteran in August 1994 filed with a VA regional office (RO) an application for VA service connection for, inter alia, a "stomach condition" that had begun in 1980 and a "[b]ilateral knee condition" that had had its onset in 1984. R. at 400-04. A February 1995 private medical record contained a diagnosis of "poss[ible] reflux esophagitis". R. at 457. At a VA examination in April 1995, he reported that he had first had epigastric pains in about 1970 after he returned from Vietnam, and that he was experiencing recent reflux for which he was taking Zantac. R. at 437. As to his knees, the veteran reported a history of having injured both his knees during in-service sports activities and boot camp. R. at 438. Bilateral knee x-rays revealed some calcification of the proximal tibial fibula joint which "could indicate capsular or ligamentous calcification, developmental, or post traumatic", but the VA physician who read the x-rays indicated an impression of "[n]o significant abnormality." R. at 440. The VA examiner diagnosed the veteran as having, inter alia, a "[p]robable hiatal hernia with esophogastric reflux" and "[c]hondromalacia [of] both knees". R. at 438. A subsequent April 1995 VA examination of the veteran's knee joints yielded a diagnosis of bilateral patella tendinitis. R. at 442.

In June 1995, the RO, inter alia, denied the veteran's claims for service connection for left- and right-knee conditions and for a stomach disorder. R. at 446. The veteran timely appealed to the Board. R. at 470, 496. In April 1996, a private physician diagnosed the veteran as having bilateral post-traumatic arthritis of the knees. R. at 539. In the March 19, 1998, BVA decision here on appeal, the Board denied as not well grounded the veteran's claims for left- and right-knee and stomach disorders. R. at 3.

## II. Analysis

"[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a). A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a)]." *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). For a service-connection claim (here under 38 U.S.C. § 1110 and 1131) to be well grounded, there generally must be: (1) Medical evidence of a current disability; (2) medical evidence, or in certain circumstances lay evidence, of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the asserted in-service injury or disease and the current disability. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *see also Elkins v. West*, 12 Vet.App. 209, 213 (1999) (en banc) (citing *Caluza*, *supra*, and *Epps v. Gober*, 126 F.3d 1464, 1468 (Fed. Cir. 1997) (expressly adopting definition of well-grounded claim set forth in *Caluza*, *supra*), *cert. denied sub nom. Epps v. West,* 118 S. Ct. 2348 (1998) (mem.)). Alternatively, either or both of the second and third *Caluza* elements can be satisfied, under 38 C.F.R. § 3.303(b) (1998), by the submission of (a) evidence that a condition was "noted" during service or during an applicable presumption period; (b) evidence showing postservice continuity of symptomatology; and (c) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the postservice symptomatology. *Savage v. Gober*, 10 Vet.App. 488, 495-97 (1997); *see McManaway v. West*, 13 Vet.App. 60, 65 (1999). The credibility of the evidence presented in support of a claim is generally presumed when determining whether it is well grounded. *See Elkins*, 12 Vet.App. at 219 (citing *Robinette v. Brown*, 8 Vet.App. 69, 75-76 (1995)). The determination whether a claim is well grounded is subject to de novo review by this Court. *See Robinette*, 8 Vet.App. at 74.

### A. Right-Knee Claim

In his opening brief, the appellant set forth arguments only as to the matter of service connection for his left-knee and stomach disorders. The Secretary asserts in his brief that the appellant has therefore abandoned his right-knee claim (Secretary's Brief (Br.) at 7-8), and the appellant's reply brief does not respond to the Secretary's assertion. Hence, the Court holds that he has abandoned that issue on appeal and will thus not review the Board's denial of service connection

4

for a right-knee disorder. *See Buckley v. West*, 12 Vet.App. 76, 81 (1998) (citing, inter alia, *Degmetich v. Brown,* 8 Vet.App. 208, 209 (1995), *aff'd*, 104 F.3d 1328 (Fed. Cir. 1997)).

## B. Left-Knee Claim

The Secretary concedes in his brief that "all of the elements for a well-grounded claim have been met" as to the veteran's left-knee claim, and argues that "reversal and remand are therefore required." Br. at 10. For the following reasons, the Court agrees. As to evidence of a current disability, the record on appeal (ROA) contains recent diagnoses by both private and VA physicians of several knee conditions, including "[c]hondromalacia [of] both knees" in April 1995 (R. at 438), bilateral patella tendinitis, also in April 1995 (R. at 442), and bilateral post-traumatic arthritis of the knees in April 1996 (R. at 539). Regarding evidence of in-service incurrence, SMRs showed treatment for a left-knee injury in June 1970, during his first period of service. R. at 31-32. As to a medical opinion on nexus, the April 1996 diagnosis of bilateral post-traumatic arthritis of the knees was made following the physician's notation of only in-service traumatic events, i.e., the veteran's report of his 1968 and 1984 in-service left-knee injuries. R. at 539. In addition, the April 1995 VA x-ray examination indicated an impression of a post-traumatic knee condition. R. at 440. Because the two events of left-knee trauma contained in the ROA that occurred in service are the only episodes of left-knee trauma contained in the ROA (R. at 31, 53, 231-33), and because the physician who diagnosed the veteran as having post-traumatic arthritis of the knee mentioned those two in-service traumas and was apparently aware of no other event(s) of left-knee trauma, the Court holds that the veteran has submitted the medical evidence of a nexus between the veteran's service and his current left-knee disability that is needed to well ground this claim. Hence, the Court holds, on de novo review, that the veteran's left-knee claim was well grounded, and agrees with the Secretary's concession (Br. at 10) that we should reverse the Board decision in this respect and remand for adjudication on the merits of the issue of service connection for the veteran's left-knee condition. *See Epps*, *Elkins, Robinette*, and *Caluza*, all *supra.*

## C. Stomach-Disorder Claim

That the appellant meets the current-diagnosis requirement of *Caluza* as to a stomach condition is not in dispute between the parties. Secretary's Br. at 8 (conceding that "there is evidence of a current disability"); Appellant's Br. at 19-20 (noting medical evidence of current stomach disorder). The Court agrees, in view of the February 1995 private physician's diagnosis of the veteran as having "poss[ible] reflux esophagitis" (R. at 457) and the April 1995 VA diagnosis of a

"[p]robable hiatal hernia with esophogastric reflux" (R. at 438). As to the second and third *Caluza* elements, the appellant does not argue that he has submitted evidence of a medical opinion as to a nexus between the veteran's current stomach condition and his service; instead, he submits that his claim is well grounded under the 38 C.F.R. § 3.303(b) continuity-of-symptomatology alternative criteria and *Savage, supra.* As noted above, § 3.303(b) allows an appellant to meet the second and third *Caluza* requirements by the submission of (a) evidence that a condition was "noted" during service; (b) evidence showing postservice continuity of symptomatology; and (c) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the postservice symptomatology. *See McManaway* and *Savage*, both *supra*.

As to whether there was a condition noted in service, the veteran's SMRs contain the following: A notation in September 1990 of "stomach problems" including aching in the epigastric area with occasional cramping as to which the examiner noted: "Doubt esophagitis" (R. at 371); a November 1990 diagnosis of gastroenteritis (R. at 309); and a notation of May 1992 treatment for sharp mid-epigastric pain that radiated through to the back (R. at 393). This is certainly sufficient evidence of the noting in service of an in-service stomach condition. There is also abundant evidence of postservice continuity of stomach-disorder symptomatology based on the veteran's own accounts contained in his original claim for service connection (R. at 404 (indicating that he has had a "[s]tomach condition" from "1980 to present")) and in his Substantive Appeal to the Board (R. at 497 (asserting that he has had stomach pain at least since his 1992 discharge from service)). *See Savage*, 10 Vet.App. at 497 (holding that veteran's retrospective assertion of continuous symptoms is competent evidence sufficient for this purpose). Moreover, there is medical corroboration of continuous stomach problems. *See* R. at 457 (private medical record of treatment for stomach problems in February 1995); R. at 437 (April 1995 record of VA treatment for stomach problems); *cf.* R. at 371 (September 1990 SMR reporting veteran's complaint of having had stomach problems since his service in Vietnam); R. at 393 (May 1992 SMR indicating that veteran stated that he had had past episodes of mid-epigastric pain). Hence, the Court concludes that there is sufficient evidence of both an in-service noting of a stomach condition and of postservice continuity of symptomatology of stomach distress, and, therefore, that those two elements of a well-grounded claim based on 38 C.F.R. § 3.303(b) are present. *See McManaway* and *Savage*, both *supra*.

7

The Secretary implies that the above-described evidence of in-service noting of the current disability is insufficient because the veteran is not currently diagnosed with any of the conditions that were noted in service. Br. at 8 ("[s]ignificantly, [the veteran] was never diagnosed with probable reflux esophagitis or probable hiatal hernia during service").

However, continuity of symptomatology, as described in *Savage, supra*, **does not require that a claimant be diagnosed with the same condition** both in service and at the time of his claim for service connection (such a requirement is part of the 38 C.F.R. § 3.303(b) criteria as to a chronicity basis for service connection); the Court in *Savage* was clearly more concerned with the described symptomatology than it was with a precise, in-service diagnosis. In that case, the Court had been presented only with postservice testimony regarding an in-service injury that had caused the veteran to "limp ever since", and held that the veteran's sworn testimony alone was sufficient to establish an in-service noting; no specific in-service medical notation, let alone a diagnosis, was required. *Savage*, 10 Vet.App. at 497. If a well-grounded claim based on a continuity-of-symptomatology analysis required identical in-service and current diagnoses, then the Court's approval in *Savage* of the use of testimonial evidence to meet the noting requirement of 38 C.F.R. § 3.303(b) would have been irrelevant because that type of retrospective lay evidence would not be sufficient, in any circumstance, to show a medical diagnosis, *see Robinette*, 8 Vet.App. at 77 (lay account of medical diagnosis is not competent medical evidence), and thus could not form part of the basis for a well-grounded claim under § 3.303(b). Hence, the Court holds that identical in-service and current diagnoses are not required for the purpose of a § 3.303(b)-based well-grounded claim for service connection. Moreover, the Court notes that the veteran was diagnosed in February 1995 as possibly having reflux esophagitis (R. at 457), and received an April 1995 diagnosis of "[p]robable hiatal hernia with esophogastric reflux" (R. at 438), and that a September 1990 SMR could not rule out a diagnosis of that very same condition (R. at 371). (Esophagitis is "inflammation of the esophagus"; reflux esophagitis is a specific type of esophagitis. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 580 (28th ed. 1994).) Thus, even if identical in-service and current diagnoses were required in a case such as this, it appears that the veteran's current disability of possible esophagitis may be the same as a condition that was noted in service.

Although the evidence is sufficient to satisfy the first two elements of a well-grounded claim

under § 3.303(b), the veteran has not submitted sufficient evidence to satisfy the final requirement of a well-grounded claim under § 3.303(b), evidence of nexus. The ROA does not contain any medical opinion indicating that the veteran's current stomach disorder is related to the one that he had in service. Although his in-service *symptoms* (described as an ache in the epigastric area with occasional cramping (R. at 371) and as sharp mid-epigastric pain (R. at 393)) appear to be very similar to the symptoms that he reported at the February 1995 private examination (described as "midsternal and epigastric pain" (R. at 455-57)), there is a complete absence of medical evidence showing a common underlying cause of those symptoms.

Nor is this a case where lay testimony is competent to provide the required evidence of a nexus. Although the veteran, even as a layperson, is competent to describe that he has experienced stomach pain located in the mid-epigastric area, he is not competent to provide a medical conclusion as to the cause of such pain. In this respect, for the reasons set forth in the Court's recent opinion in *Clyburn v. West*, 12 Vet.App. 296 (1999), this case, as was *Clyburn*, is distinguishable from *Falzone v. Brown*, 8 Vet.App. 398, 406 (1996), where the Court held that lay evidence of continued foot pain coupled with in-service and current diagnoses of pes planus were sufficient to render a claim well grounded under the continuity-of-symptomatology provisions of § 3.303(b). In *Clyburn*, the Court noted the following regarding the Court's analysis in *Falzone*:

> In finding that the veteran's statements provided "a direct link between [his] active service and the current state of his claim," the Court noted [in *Falzone*] that "pes planus is the type of condition that lends itself to observation by a lay witness," and that when the issue is one of continuity of symptomatology, lay testimony may suffice to reopen a claim. [*Falzone*, 8 Vet.App. at 403]. In rejecting the Secretary's argument that Mr. Falzone's claim should fail because he had not submitted medical statements linking his current condition with his in-service condition, the *Falzone* Court stated that the nature of the evidence required depends upon the type of condition involved, and "where the determinative issue does not require medical expertise, lay testimony may suffice by itself." *Id.* at 405 (quoting *Heuer v. Brown*, 7 Vet.App. 379, 384 (1995)). The *Falzone* Court held that since the determinative issue was not "medical in nature" (*id.* at 406), the veteran's statements were competent as to the issues of pain since service and the observable flatness of his feet. *Id.*

*Clyburn*, 12 Vet.App. at 301. As was the condition at issue in *Clyburn* (bilateral knee disability), the cause of the veteran's current stomach disorder "does not present an issue that may be satisfied

by lay testimony." *Ibid.* Unlike the issue in *Falzone*, which was the **existence** of the condition, there flat feet, as to which visual observation by a lay person was sufficient, here the issue is the **cause** of an aching stomach, a matter that is not visually observable in this case. Moreover, given the many possible causes of the veteran's stomach problems, neither he nor any other lay person can credibly testify as to the origin of his current condition. In fact, his stomach condition is so complex that none of the doctors who treated him has been able to provide a conclusive diagnosis. *See, e.g.,* R. at 371 (September 1990 RSMR with assessment of veteran as having "irritable bowel syndrome, [d]oubt inflammatory bowel disease [(IBS)]; [d]oubt PUD [(peptic ulcer disease)], [d]oubt esophagitis"); R. at 393 (May 1992 SMR assessing: "? IBS/ R/O (rule out) pancreatitis, PUD"); R. at 438 (April 1995 VA examination report diagnosing "[p]robable hiatal hernia with esophogastric reflux"); R. at 457 (February 1995 private medical record with diagnosis of "poss[ible] reflux esophagitis"). Hence, the Court holds, on de novo review, that because the cause of the veteran's stomach pain is not a matter that is observable by a lay person, medical evidence of a nexus between his current stomach condition and his continued symptomatology was required to well ground that claim and that, because no such evidence was submitted, the claim is not well grounded. *See* 38 C.F.R. § 3.303(b); *Clyburn* and *Savage,* both *supra*.

### III. Conclusion

Upon consideration of the foregoing analysis, the ROA, and the parties' pleadings, the Court holds, as to the stomach-disorder claim, that the appellant has not demonstrated that the BVA committed error -- in its findings of fact, conclusions of law, compliance with procedural requirements, or articulation of reasons or bases -- that would warrant reversal or remand under 38 U.S.C. §§ 1110, 1131, 5107(a), 7104(a) or (d)(1), or 7261, or 38 C.F.R. §§ 3.303(b). Therefore, the Court affirms the March 19, 1998, BVA decision as to its denial of the claim for service connection for a stomach disorder.

Also upon further such consideration, the Court reverses the March 19, 1998, BVA decision as to its decision that the claim for service connection for a left-knee condition is not well grounded and remands that matter for expeditious further development and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1110, 1131, 5107,

10

7104(a), (d)(1); *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991) -- all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court). *See Allday v. Brown*, 7 Vet.App. 517, 533-34 (1995). On remand, the appellant will be free to submit additional evidence and argument on the remanded claim in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.