# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 98-363

JOHNNY SPENCER, APPELLANT,

V.

TOGO D. WEST, JR.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued February 8, 2000                    Decided    March 13, 2000  )

*Thomas P. DeBerry* of Atlanta, Georgia, for the appellant.

*Darryl A. Joe*, with whom *Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; and *Jacqueline M. Sims*, Acting Deputy Assistant General Counsel, all of Washington, D.C., were on the brief, for the appellee.

Before KRAMER, FARLEY, and IVERS, *Judges*.

KRAMER, *Judge*:  The appellant, Johnny Spencer, appeals a May 29, 1997, decision of the Board of Veterans' Appeals (BVA or Board) that, inter alia, denied a claim for service connection for residuals of a right knee injury (claim 1) and denied entitlement to an increased disability rating for service-connected residuals of an injury to the left hand and wrist, currently rated as 10% disabling (claim 2).  Record (R.) at 4, 13.  The appellant has filed a brief, and the Secretary has filed a brief, an errata to his brief, and a supplemental authority.  Oral argument was held on February 8, 2000.  In his brief, the appellant explicitly abandoned any appeal with respect to two other claims decided by the BVA, and those claims will thus not be addressed by the Court.  *See Ford v. Gober*, 10 Vet.App. 531, 535 (1997); *Grivois v. Brown*, 6 Vet.App. 136, 138 (1994); *Bucklinger v. Brown*, 5 Vet.App. 435, 436 (1993).  This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).  For the reasons that follow, the Court will affirm in part and vacate in part the decision of the Board and will remand a matter.

## I. Claim 1

### A.

In 1978, the appellant reenlisted in the U.S. Army for a term of service to expire in August 1985.  Supplemental (Suppl.) R. at 1; R. at 270.  Prior to the scheduled expiration of that term of service, the appellant, effective February 14, 1983, was honorably discharged "as an alcohol abuse rehabilitation failure" on the basis of a urine specimen that he had provided on December 6, 1982. R. at 268.  On March 8, 1984, the appellant was treated at a VA orthopedic clinic for an injury to his right knee.  R. at 124.  At that time, the appellant informed the examining physician that he had injured his knee two weeks earlier while playing basketball.  R. at 124, 294.  Later that month, the appellant was hospitalized for the knee condition and was diagnosed with anteromedial rotatory instability of the right knee.  R. at 117.

In May 1989, the appellant received a letter from the Department of the Army Board for Correction of Military Records (Correction Board) stating that a favorable decision had been made on his application for the correction of his military records.  R. at 265.  The appellant was notified that the Correction Board, based on problems with the urinalysis that led to his February 1983 discharge from the Army, had corrected his service records as follows:

> a.  by voiding the honorable discharge which was issued to the individual concerned on 14 February 1983, and by showing that *he continued to serve on active duty until 15 August 1985*, when he was separated from the service with an Honorable Discharge Certificate, by reason of expiration of term of service, under the provisions of chapter 4, Army Regulation 635-200;
>
> b.  by returning to him all benefits and property he lost as the result of his premature discharge; and
>
> c.  by deleting from his military personnel and medical records any and all references to the urinalysis of the specimen he submitted on 6 December 1982.

R. at 270-71 (emphasis added).  Accordingly, the appellant's DD Form 214 now reflects that he served on active duty from November 1978 to August 1985.  Suppl. R. at 1.

After receiving notice of the actions taken by the Correction Board, the appellant submitted to VA a claim for service connection for residuals of his 1984 right knee injury.  *See* R. at 264.  In

December 1990, he underwent a VA orthopedic examination of his right knee. R. at 273. The examiner noted that the appellant had stated that he had injured his knee in 1984 while playing basketball and that he had complained that the knee swelled, stiffened, and ached. R. at 273. After conducting a physical examination, the examiner diagnosed the appellant with chondromalacia patellae of the right knee with associated early osteoarthritis. R. at 274. A VA regional office (RO) subsequently denied the appellant's claim for service connection for a right knee condition (R. at 284), and the appellant timely appealed that decision (R. at 287, 304). In July 1992, the appellant, at a hearing before the Board, testified that a doctor had recently opined that his knee condition was due to the 1984 injury. R. at 336. The Board, in a July 1993 decision, remanded the matter in order for the RO to obtain a VA District Counsel or General Counsel opinion as to whether the appellant's service between February 1983 and August 1985 constituted active service for purposes of VA benefits. R. at 347-48. That remand resulted in the May 1994 issuance of VA General Counsel Precedent Opinion 13-94 (May 9, 1994) [hereinafter G.C. Prec. 13-94], which concluded that the appellant was not in active service at the time of the 1984 knee injury because he was not "under military control" at that time. R at 359.

The RO subsequently received VA medical records dated between 1984 and 1994. Those records reflect that, in January 1989, the appellant sought treatment for pain and swelling in his right knee and informed the examiner that he had injured his knee on the previous night while playing basketball. R. at 413. In May 1989, the appellant again sought treatment for pain and swelling in his right knee. After noting that the appellant had injured his knee four days earlier while jogging and had injured his knee five years earlier while playing basketball, the examiner diagnosed the appellant with degenerative joint disease and post-traumatic changes in the medial collateral ligament. R. at 410-11. The VA medical records also reflect that, in September 1990, the appellant complained of chronic right knee pain and was diagnosed with degenerative joint disease of the right knee. R. at 408.

Taking into consideration these additional medical records, the RO issued a confirmed rating decision (R. at 456) and a Supplemental Statement of the Case (R. at 463), and the matter then was returned to the Board. In the BVA decision on appeal, the Board determined that the appellant's claim was well grounded (R. at 6) but denied the claim on the merits because, according to G.C.

3

Prec. 13-94, which was binding on the Board, the appellant, at the time the 1984 injury occurred, "was not engaged in active service." R. at 8-9. This appeal followed.

On appeal, the appellant contends that "active duty" is "a status conferred or terminated by each uniformed service department" and that the Secretary of Veterans Affairs does not have authority to interpret the term "active duty." Appellant's Brief (Br.) at 4. He further contends that, even if the Secretary does have such authority, that authority has not been exercised because the Secretary has not promulgated any regulation refining the definition of active duty. *Id*. at 5. Moreover, the appellant contends that G.C. Prec. 13-94 is violative of 10 U.S.C. § 1552(a)(4), which provides that Correction Board decisions will be "final and conclusive on all officers of the United States." Appellant's Br. at 6. In conclusion, he asserts that, because the service department has afforded the appellant "active duty" status on the date of the 1984 knee injury, and because the injury was not due to misconduct, he is entitled to service connection for residuals of that injury. Appellant's Br. at 7.

The Secretary responds that, even though the Secretary is bound by service department records establishing whether an individual was on active duty, and is bound by Correction Board findings as to active duty status, the Secretary is nevertheless permitted to determine whether that status renders a claimant eligible for VA benefits. Secretary's Br. at 14-15. The Secretary asserts that he has authority to construe the term "active duty" and has done so through G.C. Prec. 13-94. He asserts that, pursuant to G.C. Prec. 13-94, which is binding on the Board (*see* 38 U.S.C. § 7104(c); 38 C.F.R. § 19.5 (1999)), the appellant's active duty status at the time of the injury does not render him eligible for benefits because he was not under military control at the time of the 1984 injury. Secretary's Br. at 12-14.

B.

Basic entitlement of veterans to compensation for service-connected disabilities derives from 38 U.S.C. § 1131, which provides, in part: "For disability resulting from personal injury suffered . . . in line of duty . . . in the *active military, naval, or air service*, during other than a period of war, the United States will pay to any veteran thus disabled . . . compensation as provided in this subchapter." 38 U.S.C. § 1131 (emphasis added); *see also Caluza v. Brown*, 7 Vet.App. 498, 505 (1995) (service connection for VA disability compensation purposes will be awarded to veteran for

disease or injury incurred in veteran's active service), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table). The term "active military, naval, or air service" is defined to include, inter alia, "active duty." 38 U.S.C. § 101(24); *see* 38 C.F.R. § 3.6(a) (1999); *see also* 38 U.S.C. § 101(21) ("active duty" includes full-time duty in the Armed Forces, other than active duty for training); 38 C.F.R. § 3.6(b) (1999). In the present case, the BVA, noting that it was bound by G.C. Prec. 13-94, denied the appellant's claim because it found that he "was not engaged in active service" at the time of the 1984 injury. R. at 9. The dispute in the present case centers on that determination, and thus necessitates an examination of the validity of G.C. Prec. 13-94. *See* 38 U.S.C. § 7104(c); *Smith v. West*, 11 Vet.App. 134, 136 (1998) (BVA is bound by VA General Counsel precedent opinions); 38 C.F.R. § 19.5.

In G.C. Prec. 13-94, the VA General Counsel acknowledged that, pursuant to 10 U.S.C. § 1552(a)(1), "the secretary of a military department may correct any military record of that department when he or she considers it necessary to correct an error or review an injustice"; that, under 10 U.S.C. § 1552(a)(4), "a correction is 'final and conclusive on all officers of the United States,' unless it was procured by fraud"; and that "VA must accept the action of a military correction board as long as it was in accordance with the correction board's authority and was not procured by fraud." R. at 354-55 (quoting 10 U.S.C. § 1552(a)(4)). In finding that the veteran was not in the active service at the time of his 1984 injury, the VA General Counsel reasoned that "correction board actions are binding only as to the facts found, not as to entitlement based on those facts," and that VA therefore has "the authority to determine entitlement to veterans' benefits based on the application of the law to those facts." R. at 355. The VA General Counsel then concluded, based on a review of various Attorney General and VA opinions dated from 1855 through 1983 regarding what constitutes active service, that

> the veteran . . . was not in the active service at the time injury was incurred in March 1984, because, although the veteran's active duty status was subsequently extended until August 15, 1985, the veteran was not under military control, having received a discharge and returned to civilian pursuits, and, therefore, was not available to perform military duties between February 14, 1983, the original date of discharge, and August 15, 1985.

R. at 359. Accordingly, G.C. Prec. 13-94 held the following:

Service connection may not be established for a disability incurred following the date on which a veteran was discharged from active military duty, although the discharge was subsequently voided and full active-duty credit granted by a Board for Correction of Military Records to a date after the date on which injury occurred, because the veteran was not engaged in active service at that time.

R. at 359-60.

The appellant argues, inter alia, that G.C. Prec. 13-94 is inconsistent with the dictates of 10 U.S.C. § 1552(a)(4) ("Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States."). However, because the Court holds on other grounds that G.C. Prec. 13-94 is invalid, the Court, in reaching its decision, need not address to what extent, if any, 10 U.S.C. § 1552(a)(4) limits the ability of VA to promulgate regulations that, for purposes of VA benefits, may conflict with that section. Specifically, the Court holds that G.C. Prec. 13-94 is invalid because, to the amazement of the Court, that precedential opinion totally ignores, and is in patent conflict with, 38 C.F.R. § 3.203 (1999) and the Court's longstanding interpretation of that regulation (which has been frequently relied upon by the Secretary in proceedings before this Court to demonstrate lack of entitlement for those not having records required by that regulation). Simply put, the Court has held that, pursuant to 38 C.F.R. § 3.203, "service department findings are binding on VA for purposes of establishing service in the U.S. Armed Forces." *Duro v. Derwinski*, 2 Vet.App. 530, 532 (1992); *see Soria v. Brown*, 118 F.3d 747 (Fed. Cir.), *cert. denied*, 552 U.S. 958 (1997); *Cahall v. Brown*, 7 Vet.App. 232, 237 (1994); *see also* 38 C.F.R. § 3.12(e) (1999) ("honorable discharge or discharge under honorable conditions issued through a board for correction of records established under authority of 10 U.S.C. [§] 1552 is final and conclusive on [VA]").

In the instant case, the Correction Board determined that the appellant had "continued to serve on active duty until 15 August 1985" (R. at 270), and the appellant's DD Form 214 reflects that he served on active duty from November 1978 to August 1985 (Suppl. R. at 1). Because VA is bound by those service department findings (*see Duro* and *Cahall*, both *supra*; 38 C.F.R. § 3.203(a)), the Court concludes that the BVA's finding that the appellant "was not engaged in active service" at the time of his 1984 right knee injury, and G.C. Prec. 13-94 upon which that finding was predicated, are inconsistent with 38 C.F.R. § 3.203, as interpreted by the Court in *Duro, supra*. *See*

6

*Sabonis v. Brown*, 6 Vet.App. 426, 429 (1994) (Court is not bound by precedent opinions of the VA General Counsel).

C.

Although the BVA, in the decision on appeal, determined that claim 1 was well grounded and adjudicated the claim on the merits, the Court, after de novo review of the record on appeal, concludes that the appellant's claim is not well grounded. *See* 38 U.S.C. § 5107(a) ("a person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded"); *Robinette v. Brown*, 8 Vet.App. 69, 73 (1995) (determination whether a claim is well grounded is subject to de novo review by this Court). There is simply no medical evidence of record etiologically linking a present right knee condition to the 1984 injury. *See Caluza*, 7 Vet.App. at 506 (well-grounded service-connection claim generally requires medical evidence of a current disability; medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and medical evidence of a nexus between the claimed in-service disease or injury and the current disability); *see also Epps v. Gober*, 126 F.3d 1464, 1468 (Fed. Cir. 1997) (adopting this Court's definition of well-grounded service-connection claim as set forth in *Caluza, supra*), *cert. denied*, 118 S.Ct. 2348 (1998). In this regard, the Court concludes that the VA medical records dated in 1989 (R. at 410-13), which reflect diagnoses of degenerative changes and a post-traumatic disorder of the right knee, and which specifically reference right knee injuries occurring after the 1984 injury, do not constitute the requisite medical nexus evidence. *Cf. Hodges v. West*, __ Vet.App. __, __, No. 98-1275, slip op. at 5 (Jan. 12, 2000), ("Because the two events of left-knee trauma contained in the [record on appeal (ROA)] that occurred in service are the only episodes of left-knee trauma contained in the ROA . . . , and because the physician who diagnosed the veteran as having post-traumatic arthritis of the knee mentioned those two in-service traumas and was apparently aware of no other event(s) of left-knee trauma, the Court holds that the veteran has submitted the medical evidence of a nexus between the veteran's service and his current left-knee disability that is needed to well ground this claim."). The appellant's claim is thus not well grounded.

Nevertheless, the Court concludes that, in light of the appellant's testimony before the BVA that a doctor had told him that his current knee problems are related to the 1984 injury (R. at 336), and in light of VA's failure to advise the appellant to obtain a statement from that doctor, a remand is necessary in order for the Board to ensure compliance with the 38 U.S.C. § 5103(a) duty to notify. *See Robinette*, 8 Vet.App. at 80 (Court held that where claimant had not submitted well-grounded claim and "the Secretary was on notice that relevant evidence may have existed, or could have been obtained, that, if true, would have made the claim 'plausible' and that such evidence had not been submitted with the application," then that application was "incomplete," and Secretary had obligation under 38 U.S.C. § 5103(a) to notify claimant of evidence necessary to complete application); *see also McKnight v. Gober*, 131 F.3d 1483, 1485 (Fed. Cir. 1997) (specifically agreeing with this Court's holding in *Robinette* interpreting section 5103(a)). Accordingly, the Court will vacate the Board's decision with respect to claim 1 and remand that matter for readjudication consistent with this opinion. *See Meyer v. Brown*, 9 Vet.App. 425, 430 (1996) ("[u]nder section 5103(a), the application will remain open and the veteran may submit further evidence during the one-year period following the Secretary's notification to the veteran of the need for medical evidence of nexus of his disability to service"); *Robinette, supra*; *see also Franklin v. Brown*, 5 Vet.App. 190, 192-93 (1993) (vacating and remanding because Board decision and VA General Counsel Precedent Opinion upon which Board relied were inconsistent with VA regulations).

## II. Claim 2

With regard to claim 2, the appellant argues, on appeal, only that he is entitled to a disability rating in excess of 10% due to pain involved in the motion and functional use of his wrist. As the Secretary indicates in his brief, pain cannot be the basis for an award under a diagnostic code in excess of the maximum evaluation under that code. *See Johnston v. Brown*, 10 Vet.App. 80, 85 (1997) (even though there was evidence that the appellant had some functional loss due to pain in his wrist, a remand for the BVA to consider functional loss due to pain was not appropriate because the appellant was already receiving the maximum disability rating available under 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5215 (1999) for limitation of motion of the wrist). Here, the appellant's wrist disability is currently rated 10% disabling under DC 5215. *See also* 38 C.F.R. § 4.71a, DC 5003

(degenerative arthritis is rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint involved), 5010 (arthritis due to trauma is rated as degenerative arthritis). Because 10% is the maximum rating under DC 5215, the appellant is not entitled to a higher rating, even though there is evidence of record reflecting that the appellant has pain on movement. *See Johnston, supra*; 38 C.F.R. § 4.71a, DC 5003, 5010, 5215; *see also Sabonis*, 6 Vet.App. at 430 (where law and not evidence is dispositive, claim should be denied or appeal terminated because of lack of legal merit). In addition, the record is devoid of any evidence reflecting the symptomatology necessary for a rating in excess of 10% under 38 C.F.R. § 4.71a, DC 5214 (1999) (providing ratings between 20% and 50% for ankylosis of the wrist). Further, in the absence of any evidence of record that the appellant's service-connected residuals of an injury to the left hand and wrist cause "such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards," 38 C.F.R. § 3.321(b)(1) (1999), any error committed by the BVA in failing to consider the potential applicability of an extraschedular rating was nonprejudicial. *See Fisher v. Principi*, 4 Vet.App. 57, 60 (1993) (in the absence of exceptional or unusual circumstances, Board's failure to consider extraschedular rating would be nonprejudicial).

### III. Conclusion

Upon consideration of the foregoing, the May 29, 1997, BVA decision with respect to claim 1 is VACATED and that matter is REMANDED for proceedings consistent with this opinion. The Board's decision is otherwise AFFIRMED.