Citation Nr: 1448541 
Decision Date: 10/31/14 Archive Date: 11/05/14

DOCKET NO. 12-04 743 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Entitlement to service connection for tinnitus.

2. Entitlement to service connection for lipomas, to include as due to herbicide exposure.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


ATTORNEY FOR THE BOARD

W.L. Puchnick, Counsel



INTRODUCTION

The Veteran, who is the appellant, served on active duty in the U.S. Marine Corps from April 1969 to October 1970, to include service in the Republic of Vietnam from November 1969 to October 1970. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from rating decisions dated August 2010 and July 2011 by the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee, which denied entitlement to service connection for tinnitus and entitlement to service connection for lipomas, to include as due to herbicide exposure, respectively. The August 2010 rating decision also denied entitlement to service connection for bilateral hearing loss. However, that claim was subsequently granted by VA's Appeals Management Center (AMC) in a June 2014 rating decision. 

This appeal was processed using the Virtual VA/Veterans Benefit Management System (VBMS) paperless claims processing system. Accordingly, any future consideration of this appellant's case should take into consideration the existence of this electronic record. 

Review of the paperless claims file reveals that additional evidence has been received since the last supplemental statement of the case (SSOC) issued in June 2014. However, as the Veteran's claim for entitlement to service connection for tinnitus is the subject of a full grant of the benefit sought, he is not prejudiced by the submission of the additional evidence. Furthermore, because the recently-received evidence is not relevant to the Veteran's claim for entitlement to service connection for lipomas, there is no reason to seek a waiver of consideration of this evidence by the RO, pursuant to 38 C.F.R. § 20.1304(c) (2014). 

The current claims were the subject of a remand by the Board in January 2014, in order to obtain current VA examinations and opinions as to whether the tinnitus and lipomas were related to service. The aforementioned development has been completed and the case is ready for Board review. 


FINDINGS OF FACT

1. The Veteran has a current tinnitus disability.

2. The Veteran experienced acoustic trauma in service.

3. Tinnitus has been unremitting since service.

4. Currently-diagnosed tinnitus is etiologically related to in-service noise exposure.

5. The Veteran's tinnitus had its onset in service and is associated with the bilateral hearing loss.

6. A lipoma did not manifest during military service and is not shown to be causally or etiologically related to service, to include exposure to herbicides.


CONCLUSIONS OF LAW

1. The criteria for service connection for tinnitus have been met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.303, 3.310 (2014). 

2. A lipoma was not incurred in or aggravated by active service, to include as a result of exposure to herbicide agents therein. 38 U.S.C.A. §§ 1110, 1154, 5103(a), 5103A (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.159, 3.303, 3.304 (2014).



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

Service Connection for Tinnitus

The Veterans Claims Assistance Act of 2000 (VCAA) enhanced VA's duty to notify and assist claimants in substantiating their claims for VA benefits. 38 U.S.C.A. §§ 5100, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.159, 3.326(a) (2014). Regarding the Veteran's claim for service connection for tinnitus, because the Board is granting in full the benefit sought on appeal, no further discussion of VA's duties to notify and assist is necessary. 

Service Connection for Lipomas

Regarding the VCAA, upon receipt of a complete or substantially-complete application for benefits, VA is required to notify the claimant and his representative of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). 

Proper notice from VA must inform the claimant of any information and evidence not of record: (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1). This notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328, 1333 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004). 

The United States Court of Appeals for Veterans Claims (Court) issued a decision in the appeal of Dingess v. Nicholson, 19 Vet. App. 473, 484-85 (2006), which held that the notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service-connection claim, including the degree of disability and the effective date of an award. Those five elements include: (1) veteran status; (2) existence of a disability; (3) a connection between a veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability.

The March 2011 notice letter sent prior to the initial denial of the claim for service connection for lipomas in July 2011 fully satisfied VCAA notice requirements. The RO apprised the Veteran of the information and evidence necessary to substantiate the claim for service connection, what information and evidence he was to provide, and what information and evidence VA would attempt to obtain on his behalf. The RO further informed the Veteran how VA determines the disability rating and effective date once service connection is established, all of which satisfied Dingess notice requirements. 

VA's duty to assist has also been met. The claims file contains all available evidence pertinent to the claim. The Veteran was given appropriate notice of the responsibility to provide VA with any treatment records pertinent to the claim and the record contains sufficient evidence to make a decision on the claim. The service treatment records (STRs) are included in the claims file, and available post-service treatment records identified as relevant to the Veteran's claim have been obtained or otherwise submitted. 

Additionally, the Veteran was afforded a VA medical examination in connection with his claim for service connection for lipomas in February 2014. 38 C.F.R. § 3.159(c)(4) (2014). When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that the February 2014 examination is adequate, because the opinions expressed within the examination report considered all the pertinent evidence of record, to include the statements of the Veteran, and provided a complete rationale for the opinions stated. Accordingly, the Board finds that VA's duty to assist with respect to obtaining VA examinations or opinions has been met. 38 C.F.R. § 3.159(c)(4). Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist him in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).

Service Connection Legal Criteria

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service; and (3) a relationship or nexus between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004); see also Hickson v. West, 12 Vet. App. 247, 253 (1999), citing Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd, 78 F.3d 604 (Fed. Cir. 1996). 

Under 38 C.F.R. § 3.303(b) , an alternate method of establishing the second and third Shedden/Caluza element for certain chronic disabilities listed in 38 C.F.R. § 3.309(a) (2014) is through a demonstration of continuity of symptomatology. See Clyburn v. West, 12 Vet. App. 296, 302 (1999). Continuity of symptomatology may be established if a claimant can demonstrate: (1) that a condition was "noted" during service; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013); 38 C.F.R. §§ 3.303(b), 3.309(a). 

Neither tinnitus nor lipoma is a "chronic disease" listed under 38 C.F.R. § 3.309(a). Therefore, the presumptive provisions of 38 C.F.R. § 3.303(b) for service connection based on "chronic" symptoms in service and "continuous" symptoms since service are not for application. Walker, 708 F.3d at 1336-38.

Service connection may also be established on a secondary basis for a disability which is proximately due to or the result of service-connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995). 

A veteran who served in the Republic of Vietnam during the Vietnam era is presumed to have been exposed to certain herbicide agents (e.g., Agent Orange). In the case of such a veteran, service connection for the asserted disorder for which such a presumption has been established will be presumed if manifested within the applicable presumptive period. 38 U.S.C.A. § 1116 (West 2002); 38 C.F.R. §§ 3.307(a)(6), 3.309(e) (2014). This presumption of service connection may be rebutted by affirmative evidence to the contrary. 38 U.S.C.A. § 1113; 38 C.F.R. § 3.307(d).

In this case, because the Veteran has confirmed service in the Republic of Vietnam from November 1969 to October 1970, his in-service exposure to herbicides is conceded. 38 U.S.C.A. § 1116(f) ; 38 C.F.R. § 3.307(a)(6)(iii).

Even when presumptive service connection is not appropriate, a Veteran is not precluded from establishing service connection with proof of actual direct causation. Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994). Though Combee concerns radiation exposure rather than herbicide exposure, it applies by extension to cases such as this one which involve herbicide exposure. McCartt v. West, 12 Vet. App. 164, 167 (1999). 

In relevant part, 38 U.S.C.A. § 1154(a) requires that VA give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim for disability or death benefits. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). 

The United States Court of Appeals for the Federal Circuit has held that "[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson in reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006) ([T]he Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence.").

Service Connection for Tinnitus

The Veteran contends that his tinnitus is the result of in-service noise exposure, and that he is competent to provide lay testimony regarding the presence and onset of tinnitus. He asks that reasonable doubt be resolved in his favor.

Review of the STRs shows that they are negative for complaints or diagnosis of, or treatment for, tinnitus. The Veteran was diagnosed with tinnitus following evaluation by Twenty-Second and State Medical Clinic on August 31, 1990. Upon evaluation on February 7, 2007, by Heritage Medical Associates, P.C. (Heritage Medical), the Veteran reported bilateral tinnitus. While seen by Heritage Medical on February 20, 2008, the Veteran reported bilateral tinnitus, no change. Following evaluation by Family Wellness Group of Middle Tennessee, LLC, (Family Wellness) on January 20, 2010, the Veteran was diagnosed with suspect hearing loss causing tinnitus. During private audiological evaluation by Mid-State ENT in April 2010, the Veteran complained of a long history of tinnitus, greater in the left ear. He was diagnosed with tinnitus. The Veteran was again diagnosed with tinnitus by Family Wellness on April 28, 2010. 

Upon his application for VA compensation received in May 2010, the Veteran complained of tinnitus beginning in August 1990. The Veteran attended a VA audiological evaluation on August 9, 2010. He reported bilateral tinnitus which began approximately 20 years previously, and which was very bothersome and caused him to have trouble falling asleep at night, for which he used a fan to mask the tinnitus. He could recall no specific incident which caused the tinnitus. The VA audiologist diagnosed constant tinnitus, and opined that as the Veteran reported tinnitus which began approximately 20 years beforehand, it was less likely as not that the Veteran's tinnitus was due to in-service noise exposure. In his notice of disagreement received in September 2010, the Veteran reported that he had worked for K-Mart for 39 years and had not been exposed to noise.

The Veteran attended a VA audiological examination on February 26, 2014. The Veteran reported the onset of tinnitus approximately 30 years previously, when he "woke up in bed and my left ear in particular was just ringing." However, during the same evaluation, the Veteran reported military noise exposure due to bazookas, grenades, rifles, heavy trucks, and a large explosion in November 1969. While the examining audiologist opined that it was less likely than not that the Veteran's tinnitus was caused by or a result of military noise exposure, he also stated that "[h]earing loss and tinnitus often co-exist and may have similar etiologies (i.e., noise exposure)." The audiologist cited the lack of evidence of tinnitus in the STRs and the Veteran's report that tinnitus had started more than 10 years since his discharge from service. 

In a June 2014 lay statement, the Veteran related that his tinnitus started at Camp Lejeune, North Carolina, during training exercises when he was shooting "shoulder fired weapons" and "something like a bazooka." This evidence is the Veteran's most recent statement as to the onset of tinnitus, and the Board finds that the Veteran is credible to report such onset. Indeed, tinnitus is a condition capable of lay observation and diagnosis. See Charles v. Principi, 16 Vet. App. 370, 374 (2002) ("ringing in the ears is capable of lay observation"). There is no evidence in the record to suggest that the Veteran's account of having tinnitus is not credible. While the Veteran stated in his May 2010 VA application for compensation as well as during August 2010 VA examination that his tinnitus began in 1990, it is reasonable to assume the Veteran was referring to the initial diagnosis of tinnitus in August 1990. Although he reported during February 2014 that his tinnitus began approximately 30 years previously, the Board reiterates that it finds the Veteran's June 2014 statement that his tinnitus began during training at Camp Lejeune (the most recent evidence of tinnitus onset) to be credible. There is no evidence in the record to suggest that the Veteran's account of having tinnitus is not credible. Furthermore, the Veteran reported in-service noise exposure during February 2014 VA examination, during which the examiner stated "[h]earing loss and tinnitus often co-exist and may have similar etiologies (i.e., noise exposure)." 

As noted above, service connection may be established on a secondary basis for a disability which is proximately due to or the result of service-connected disease or injury. 38 C.F.R. § 3.310(a); see Allen, 7 Vet. App. at 448. The evidence shows that a current disability of bilateral tinnitus exists. The Veteran has made credible statements that bilateral tinnitus had its onset in service. There is also the February 2014 VA examiner's statement that "[h]earing loss and tinnitus often co-exist and may have similar etiologies (i.e., noise exposure)"-and, in this case, the Veteran has been granted service connection for hearing loss. Finally, during private evaluation on January 20, 2010, the Veteran was diagnosed with suspect hearing loss causing tinnitus. Therefore, resolving reasonable doubt in favor of the Veteran, service connection for tinnitus as secondary to the Veteran's service-connected bilateral hearing loss disability is warranted. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102. 

Service Connection for Lipomas, to Include as Due to Herbicide Exposure

In asserting that he is entitled to service connection for lipomas, to include as due to herbicide exposure, the Veteran (citing a web-based study) avers that Vietnam veterans such as himself (particularly those exposed to herbicides) have a higher incidence of soft tissue masses. He asks that reasonable doubt be resolved in his favor.

STRs are negative for complaints or diagnosis of, or treatment for, lipomas. On July 13, 1970, the Veteran was seen for a sore on his arm, which was cleaned and dressed. The Veteran's October 1970 separation examination noted a birth mark on his abdomen.

The evidence shows no evidence of a lipoma for over three decades following separation from service. Upon evaluation by Heritage Medical on January 19, 2005, the examining physician noted a history of lipoma, site unspecified. During evaluation by Heritage Medical on December 20, 2006, the Veteran complained of a lump in his right upper arm. The examining physician noted a history of lipoma, site unspecified.

Magnetic resonance imaging (MRI) of the right biceps/triceps performed by Bio Imaging on February 1, 2007, indicated a fat-containing mass within the lateral head of the triceps muscle, most compatible with a benign lipoma. During examination by Heritage Medical on February 7, 2007, a non-tender mass in the left upper quadrant of the abdomen, said to feel "like a lipoma" was noted. On that same date, the Veteran was diagnosed with lipoma of the right triceps muscle by Tennessee Orthopaedic Alliance. A letter from William Gavigan, M.D., of said facility (also dated February 7, 2007), diagnosed lipoma of the right triceps muscle, not work-related. Evaluation by Heritage Medical on February 20, 2008, revealed a 4.0-cm lipoma of the left upper abdomen and right elbow. 

Upon his VA application for compensation received in March 2011, the Veteran stated he suffered from a lipoma which began in 2006 and which was related to Agent Orange or other herbicide exposure.

The Veteran was afforded a VA examination of the skin in February 2014. The examining physician noted the diagnosis of lipoma, and found it to be benign. The examiner described an approximate 5.0 x 6.0-cm soft tissue subcutaneous mass over the triceps area of the right upper arm, with no inflammation or apparent tenderness, and an approximate 4.0 x 4.0-cm soft tissue subcutaneous mass over the left abdominal wall, with no inflammation or apparent tenderness. The examining physician concluded that it was less likely than not that the lipoma was incurred in or caused by service. He explained that the STRs did not reveal evidence of a lipoma. Rather, there was a sole entry dated July 13, 1970, stating "Sore on arm cleaned and dressed." The examiner set forth that a lipoma of the right upper arm was documented on December 20, 2006, and that orthopedic notes dated January 7, 2007, documented the upper-arm lipoma, which was confirmed by MRI on February 7, 2007, and that notes dated February 20, 2008, documented a 4.0-cm lipoma of the upper abdomen and right arm. The physician concluded that: (1) there was no evidence to suggest that a sore on the Veteran's arm would progress to a lipoma; (2) there was no scientific evidence or known correlation to skin sores predisposing or developing into lipomas; (3) there was no medical or scientific evidence to suggest a relationship between herbicide exposure and the development of lipoma; (4) the most likely etiology of the Veteran's lipomas is that the Veteran developed the lipomas without predisposing factors or known causes; and (5) lipomas are very common in the general population commonly without known predisposing conditions or risk factors. 

Here, the medical evidence clearly demonstrates a current diagnosis of a lipoma of the right arm and left upper abdomen. As such, the remaining issue to be resolved is whether there is competent evidence of record which establishes that the there is a causal connection between the Veteran's disability and his service. 

Presumptive Service Connection Due to Herbicide Exposure

While the record demonstrates that the Veteran served in Vietnam and is entitled to the presumption of exposure to herbicides pursuant to 38 C.F.R. § 3.307(a)(6)(ii), the Board finds that presumptive service connection is not warranted for the Veteran's lipomas because VA has not recognized lipomas as having a positive association with exposure to herbicides. 38 C.F.R. § 3.309(e). Therefore, the Veteran is not entitled to presumptive service connection for his lipoma conditions due to herbicide exposure. 38 U.S.C.A. § 1116 ; 38 C.F.R. § 3.307(a)(6). 

Direct Service Connection

The Board finds that the Veteran's lipomas did not manifest either during service or for many years thereafter. As noted, the STRs contain no evidence of a lipoma, and the post-service evidence does not reflect the presence of a lipoma until the February 2007 MRI, over three decades subsequent to the Veteran's separation from service. Although service connection for a disorder such as this may not be shown simply based on continuity of symptoms (see Walker, 708 F.3d at 1331), such a large gap in treatment also weighs against the Veteran's claim that his lipomas are related to service. Additionally, no competent evidence causally relates the Veteran's current lipomas to active service. 

Further, lipomas are not one of the chronic disorders that may be established based on a legal "presumption" by showing that the disability manifested itself to a degree of 10 percent or more within one year from the date of separation from service (although, as noted, the evidence of record demonstrates that the Veteran's lipomas did not first appear until decades after discharge from service). As such, service connection on a presumptive basis due to manifestation to a degree of at least 10 percent within one year after discharge from service is not warranted. See 38 U.S.C.A. § 1112; 38 C.F.R. §§ 3.307, 3.309. 

Having found that the Veteran's lipomas did not have their onset during service or within a year thereafter, the Board must next consider whether the lipomas are related to the Veteran's confirmed exposure to herbicides during his active duty period. See Combee, 34 F.3d at 1039. Following examination in February 2014, the VA physician concluded that: (1) there was no evidence to suggest that a sore on the Veteran's arm would progress to a lipoma; (2) there was no scientific evidence or known correlation to skin sores predisposing or developing into lipomas; (3) there was no medical or scientific evidence to suggest a relationship between herbicide exposure and the development of lipoma; (4) the most likely etiology of the Veteran's lipomas is that the Veteran developed the lipomas without predisposing factors or known causes; and (5) lipomas are very common in the general population commonly without known predisposing conditions or risk factors. 

Notably, the Veteran has not submitted any statement from a medical expert regarding the etiology of his lipomas, to include an etiological nexus with herbicide exposure during service, which would contradict the VA examiner's opinion. The Board finds that the examination was adequate for evaluation purposes. Specifically, the examiner reviewed the claims file, interviewed the Veteran, and conducted a physical examination. There is no indication that the VA examiner was not fully aware of the Veteran's past medical history or that he misstated any relevant fact. 

In support of his claim, the Veteran has provided various websites regarding the effects of herbicide exposure. Medical treatise evidence can, in some circumstances, constitute competent medical evidence. See 38 C.F.R. § 3.159(a)(1) (2014) (competent medical evidence may include statements contained in authoritative writings such as medical and scientific articles and research reports and analyses). Medical evidence, however, that is speculative, general, inconclusive in nature, or unaccompanied by the opinion of a competent professional cannot support a claim in and of itself. See Sacks v. West, 11 Vet. App. 314 (1998) (holding that a medical article or treatise can provide support for a claim, but must be combined with an opinion of a medical professional and be reflective of the specific facts of a case as opposed to a discussion of generic relationships). Here, the websites submitted by the Veteran are general in nature and do not specifically relate to the facts and circumstances surrounding his case. They do not specifically relate either to the Veteran or to his lipomas. Moreover, no competent expert has suggested the websites are applicable or otherwise related to the Veteran's specific case. As such, this evidence has limited probative value. 

The Veteran himself contends that his lipomas are related to his herbicide exposure in service. The Board concedes that a layperson such as the Veteran is competent to testify regarding such observable symptomatology as a growth at or slightly below the surface of the skin, as the Veteran has done. See Jandreau v. Nicholson, 492 F.3d at 1377; see also Buchanan, 451 F.3d at 1337 (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence). For the reasons discussed above, however, the Board does not find the Veteran to be competent opine that his lipomas are related to any incident of service, to include herbicide exposure. Opinions regarding the proper diagnosis and etiology of any type of skin condition or growth require specialized skill, knowledge, and/or training, which the Veteran has not demonstrated. Such growths are complex disorders which require specialized training for a determination as to diagnosis and causation, and they are therefore not susceptible of lay opinions on etiology, and the Veteran's statements therein cannot be accepted as competent evidence. 

In conclusion, the preponderance of the evidence is against the award of service connection for lipomas, to include as due to herbicide exposure, as such a disorder was not incurred during service or within a year thereafter, and may not be presumed to have been incurred therein. As a preponderance of the evidence is against the award of service connection, the benefit of the doubt doctrine is not applicable in the instant appeal. See 38 U.S.C.A. § 5107(b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1991).


ORDER

Entitlement to service connection for tinnitus is granted.

Entitlement to service connection for lipomas, to include as due to herbicide exposure, is denied.



____________________________________________
K.J. Alibrando
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs