Citation Nr: 1719245 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 12-06 990 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Wilmington, Delaware


THE ISSUES

1. Entitlement to service connection for a back disability.

2. Entitlement to service connection for bilateral leg pain, to include as secondary to a back disability.


REPRESENTATION

Appellant represented by: James B. Halligan, III, Esquire


WITNESS AT HEARING ON APPEAL

Appellant




ATTORNEY FOR THE BOARD

B. Thompson, Associate Counsel


INTRODUCTION

The Veteran served on active duty from January 1980 to January 1983.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an April 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO).

In September 2013, the Veteran testified at a Video Conference hearing before the undersigned Veterans Law Judge. A transcript of the hearing is of record.

In November 2014 and May 2016, the Board remanded the case for further evidentiary development.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

1. The most probative evidence of record indicates that the Veteran's back disability is not related to service.

2. The most probative evidence of record indicates that the Veteran's bilateral leg pain is not related to service, nor caused or aggravated by a service-connected disability.



CONCLUSION OF LAW

1. The criteria for establishing service connection for a back disability have not been met. 38 U.S.C.A. §§ 1131, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2016).

2. The criteria for establishing service connection for bilateral leg pain have not been met. 38 U.S.C.A. §§ 1131, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307. 3.309, 3.310 (2016). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Veterans Claims Assistance Act

Under the Veterans Claims Assistance Act of 2000 (VCAA) VA has a duty to notify and assist a claimant in the development of a claim. VA's duty to notify was satisfied by letter in September 2010. See 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2016); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

Concerning the duty to assist, the record also reflects that VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran, including service treatment records, post-service treatment records, records from the Social Security Administration (SSA), and VA examination reports. The Veteran was afforded a hearing before the Board and a copy of the transcript is of record. There is no allegation that the hearing provided to the Veteran was deficient in any way and further discussion of the adequacy of the hearing is not necessary. Dickens v. McDonald, 814 F.3d 1359 (Fed. Cir. 2016). 

Additionally, there has been substantial compliance with the Board's prior remand directives. Stegall v. West, 11 Vet. App. 268, 271 (1998). See also D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) (finding that only substantial compliance, rather than strict compliance, with the terms of a Board engagement letter requesting a medical opinion is required). Updated VA treatment records, as well as an addendum opinion from the November 2015 VA examiner, were obtained and associated with the claims file. 

After a careful review of the file, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Appellant. See Bernard v. Brown, 4 Vet. App. 384 (1993).

Service Connection

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131 (West 2014), 38 C.F.R. § 3.303 (2016). Evidence of continuity of symptomatology from the time of service until the present is required where the chronicity of a chronic condition manifested during service either has not been established or might reasonably be questioned. 38 C.F.R. § 3.303(b) (2016); see also Walker v. Shinseki, 708 F.3d 1331, 1340 (Fed.Cir.2013) (holding that only conditions listed as chronic diseases in 38 C.F.R. § 3.309(a) may be considered for service connection under 38 C.F.R. § 3.303(b)). Regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d) (2016).

Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999). 

Service connection may also be established for a disability which is proximately due to or the result of a service-connected disability. 38 C.F.R. § 3.310(a). Further, a disability which is aggravated by a service-connected disability may be service-connected to the degree that the aggravation is shown. 38 C.F.R. § 3.310; Allen v. Brown, 7 Vet. App. 439 (1995).

Moreover, where a veteran served continuously for 90 days or more during a period of war, or during peacetime service after December 31, 1946, and arthritis or organic disease of the nervous system becomes manifest to a degree of 10 percent within one year from the date of termination of such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2016). 

The Board has reviewed all the evidence in the record. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the Veteran or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate each claim and what the evidence in the claims file shows, or fails to show, with respect to each claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the Veteran. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

Back Disability

The Veteran testified that he sustained a back injury while in basic training during his active service in Okinawa, Japan, and that this injury is the cause of his current back disability. VA treatment records show that, in February 2012, the Veteran reported that he sustained a back injury during his military service from carrying heavy loads, and he reported that he was trying to get service connected for herniated discs he claims are related to this injury. In June 2012, VA treatment records indicate that the Veteran reported he injured his back while in the Marines when he jumped out of a helicopter, and that his current back pain, which radiates to his legs and feet, is a result of that injury. VA treatment records show that the Veteran reported in January 2015 that he fell during military training, which has resulted in chronic back pain since the 1980's. In March 2012, the Veteran's older brother, S. B., submitted a statement in support of the Veteran's claim. S. B. indicated that he lived in California while his brother was in the Marine Corps in California, and that the Veteran would go to S. B.'s apartment to recover after doing brutal exercises. S. B. noted that his bother carried extra weight in addition to normal Marine gear because he was a field radio operator. S. B. noted that the intensive drills caused the Veteran back pain, but the Veteran worked through the pain. S. B. further indicated that the Veteran's back pain continues to flare up occasionally after his military service. 

As an initial matter, the Board notes that the Veteran has been diagnosed during the course of the appeal with degenerative arthritis of the spine. Accordingly, the first criterion for establishing service connection has been met. The question becomes whether this condition is related to service.

Service treatment records show that the Veteran was diagnosed with a back strain in December 1982. On December 7, 1982, the Veteran reported that his back felt much better, and that he was able to bend side to side. He attended physical therapy, and was discharged on December 18, 1982 due to lack of attendance. A medical examination on December 18, 1982 indicates that his spine was normal. 

Private treatments records obtained through the Social Security Administration show that the first treatment for his back condition following service was in February 2006, after a January 31, 2006 motor vehicle accident. A February 2006 MRI of the Veteran's lumbar spine showed annular bulging and degenerative changes in the lumbar spine superimposed on developmental narrowing of the lumbar spinal canal. February and March 2006 electromyogram (EMG) reports revealed electrodiagnostic studies suggestive of bilateral L5 radiculitis with no evidence of peripheral polyneuropathy or myopathy at the time. The Veteran was diagnosed with, in pertinent part, thoracic and lumbosacral strain and sprain, multiple disc bulges, and lumbosacral radiculitis. In November 2006, it was noted that the Veteran was injured in a motor vehicle accident in January 2006, and that he has since been experiencing shooting pains to his thighs, paresthesia and tingling of both feet, and pain radiating from his lumbosacral spine to both of his lower extremities. A November 2006 EMG report indicated that the study was consistent with bilateral L5 radiculopathy.

Private treatment records from May and June 2007 indicate that the Veteran was injured in another motor vehicle accident on February 26, 2007. The Veteran was diagnosed with thoracic, and lumbosacral strain and sprain, as well as lumbosacral radiculitis. 

Private treatment records from September 3, 2007 show that the Veteran reported that he fell in the shower three days before and that he was having back pain. VA treatment records from October 2007 indicate that the Veteran denied any illness or injury while in the military.

VA treatment records show that the Veteran had an MRI of the lumbar spine in October 2007, which demonstrated multiple levels of disc protrusion, mild spinal stenosis at L3-L4 and L4-L5 levels, mild disc protrusion into the left lateral nerve root recess at L5-S1 level, and focal disc protrusion into right neural foramen at the L4-L5 level. It also showed mild scoliosis of the lumbar spine with its convexity towards the left. An October 2007 MRI of the Veteran's thoracic spine showed small focal areas of disc protrusion at the T2-T3 level, T5-T6 level, and T6-T7 level, however, none of them caused any extradural impression on the spinal cord, except at the T2-T3 level to the right of the midline.

On an April 2009 VA treatment record, the Veteran reported having low back pain for several years, and he reported that he could not remember any precipitating event. The Veteran denied any previous injuries. 

Private treatment records show that the Veteran reported low back pain in October 2010 due to heavy lifting at work, which involved stocking shelves at Kmart. The treatment notes indicate that the Veteran reported that he had back pain two years ago with radiation to his legs.

Private treatment records show that an MRI of the Veteran's lumbar spine from February 2011 revealed stable appearing disc bulges at the levels of L2-L3 through L4-L5 resulting in mild central canal stenosis, as well as interval development of annular tear at the level of L2-L3 in the midline. The Veteran complained of having low back pain with radiation into the buttocks and legs for the past three months in March 2011. The Veteran's doctor noted that the Veteran denied any injury or stress prior to the onset of the pain. Private treatment records also show that the Veteran reported back pain after falling off of a ladder in October 2011.

A February 2012 private X-ray of the Veteran's thoracic spine showed mild degenerative change in the upper thoracic spine and scoliosis. A February 2012 X-ray of the Veteran's lumbar spine showed minimal scoliosis and was otherwise unremarkable. VA treatment records show that the Veteran had an MRI of the lumbar spine in July 2012, which revealed multilevel degenerative changes and disc desiccation changes at L5-S1.

As there is no competent evidence of a chronic back disability in service or within one year following discharge from service, competent evidence linking the current condition with service is required to establish service connection. However, on this question, there are no medical opinions in favor of the claim of record. 

The Veteran underwent VA examination in April 2011. The VA examiner diagnosed the Veteran with degenerative disc disease of the thoracolumbar spine. After an in-person examination and a review of the Veteran's claims file, the examiner opined that it is not at least as likely as not that the Veteran's current back condition is a result of back injuries incurred while in service in 1982, as there was no chronic documentation of complaints from 1982 until 2007, when the Veteran had an MRI due to back pain.


The Veteran underwent a VA examination for his back in November 2015. After an in-person examination, as well as a review of the Veteran's claims file, the examiner diagnosed the Veteran with degenerative arthritis of the spine, and opined that the Veteran's condition was less likely than not incurred in or caused by the claimed in-service injury, event, or illness. The VA examiner explained that there was no chronic documentation of complaints from 1982 until 2007, approximately 25 years after service, and that a 2007 treatment note indicates that the Veteran had back pain for two years due to the wear and tear of his job as a roofer. Therefore, the examiner determined that it was less likely that the Veteran's current back disability is related to a strain from 1982.

In December 2016, an addendum medical opinion was provided by the November 2015 VA examiner. The examiner opined that the Veteran's current back disability was less likely than not incurred in or caused by the claimed in-service injury, event, or illness. The examiner explained that there was no chronic documentation of complaints after 1982 until over 20 years later, that the Veteran was involved in a motor vehicle accident after service, and that he worked as a roofer that resulted in complaints of back pain. 

After reviewing the evidence of record, the Board finds that the December 2016 opinion is the most probative evidence. The examiner reviewed the entire claims file, including the records from the Social Security Administration, and he examined the Veteran in person. The opinion was accompanied by a rationale for the conclusion reached. Accordingly, it is given great probative weight. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302-04 (2008). There is no medical opinion to the contrary.

The Board does not overlook the fact that the Veteran's service treatment records show that he was diagnosed with a back strain in December 1982. However, the Board also notes that the Veteran did not seek medical treatment for his back until over 20 years after service in February 2006. Further, the treatment notes indicate that the Veteran only sought treatment for his back in February 2006 because he was in a motor vehicle accident on January 31, 2006. Private treatment records from May and June 2007 indicate that the Veteran was in another motor vehicle accident in February 2007. It is also notable that the Veteran did not mention his back injury in the military on a few occasions when seeking treatment for his back; specifically, VA treatment records from October 2007 indicate that the Veteran denied any illness or injury while in the military, VA treatment records from April 2009 show that the Veteran reported that he could not remember any precipitating event for his back pain and he denied any previous injuries, and in March 2011, the Veteran's private doctor noted that the Veteran denied any injury or stress prior to the onset of his back pain three months earlier. 

Thus, while the Veteran now alleges having had back problems since his injury in service, the Board does not find the Veteran's assertions of back pain since service to be persuasive. See Buchanan v. Nicholson, 451 F.3d 1331, 1336-1337 (2006) (the lack of contemporaneous medical records, the significant time delay between the affiants' observations and the date on which the statements were written, and conflicting statements of the veteran are factors that the Board can consider and weigh against a veteran's lay evidence). The Board finds his December 1982 separation examination showing a normal spine, the lack of back complaints after service until 2006, and his reports of back pain following a motor vehicle accident in January 2006 to be more persuasive and probative than current assertions. See AZ v. Shinseki, 731 F.3d 1303 (Fed. Cir. 2013) (recognizing the widely held view that the absence of an entry in a record may be considered evidence that the fact did not occur if it appears that the fact would have been recorded if present). 

To the extent that the Veteran asserts that his current back disability is related to service, the Veteran has not shown that he has specialized training sufficient to render such an opinion. Accordingly, his opinion as to the diagnosis or etiology of degenerative arthritis of the spine is not competent medical evidence, as such questions require medical expertise to determine. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007) (noting general competence to testify as to symptoms but not to provide medical diagnosis). Moreover, whether the symptoms the Veteran experienced in service or following service are in any way related to his current back disability is a matter that requires medical expertise to determine. See Clyburn v. West, 12 Vet. App. 296, 301 (1999) ("Although the veteran is competent to testify to the pain he has experienced since his tour in the Persian Gulf, he is not competent to testify to the fact that what he experienced in service and since service is the same condition he is currently diagnosed with."). The Board finds the opinion of the VA examiners to be significantly more probative than the Veteran's lay contentions.

The Board notes the "buddy statements" submitted on the Veteran's behalf in September 2010, February 2011, and April 2011, as well as the February 2014 email correspondence from the Veteran's sister. However, the majority of the statements merely address the current status of the Veteran's back disability. The statement from the Veteran's brother addresses observations of the Veteran's back pain during his time in service. However, there is no indication the Veteran's brother has medical expertise such that his opinion on the diagnosis of the Veteran's back disability in service or the cause of the Veteran's current back disability is competent medical evidence. The Board finds the medical evidence of record to be significantly more probative than the lay assertions provided in buddy statements. 

In sum, a chronic back disability was not shown in service or for many years thereafter, and the most probative evidence is against a finding that the current back disability is related to service. Accordingly, the Board finds that the preponderance of the evidence is against the claim, and service connection is denied. 

Bilateral Leg Pain

The Veteran does not contend and the evidence does not show a bilateral leg disability during service or for many years thereafter. Rather, the Veteran contends that his bilateral leg pain is secondary to his back disability. Post service medical evidence confirms that the Veteran has been diagnosed on several occasions with L5 radiculitis or radiculopathy.

However, because service connection has not been granted for the back disability, any further consideration of the issue of entitlement to secondary service connection for a bilateral leg disability is moot as secondary service connection presupposes that service connection is in effect for the underlying disability. See 38 C.F.R. § 3.310.

In reaching the above conclusions as to both issues, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b) (West 2014); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-56 (1990).


ORDER

Service connection for a back disability is denied.

Service connection for bilateral leg pain, to include as secondary to a back disability, is denied.



____________________________________________
K. A. BANFIELD
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs