﻿Citation Nr: AXXXXXXXX
Decision Date: 06/27/19 Archive Date: 06/27/19

DOCKET NO. 190225-5627
DATE: June 27, 2019

ORDER

Entitlement to a rating in excess of 30 percent for ischemic heart disease, status post coronary artery bypass graft (CABG), is denied.

Entitlement to a rating of 50 percent, but no higher, for posttraumatic stress disorder (PTSD), is granted.

FINDINGS OF FACT

1. During the period on appeal, the Veteran’s ischemic heart disease, status post CABG, was characterized by left ventricular dysfunction with an ejection fraction of 57 percent or greater, and a workload greater than 5 METs but not greater than 7 METs, resulting in dyspnea, fatigue, angina, and dizziness.

2. During the period on appeal, the Veteran’s psychiatric symptoms have been characterized by such symptoms as restricted affect, social isolation, memory impairment, poor insight, significant depression, anxiety, chronic nightmares, disturbances of motivation and mood, and severe difficulty in establishing and maintaining effective work and social relationships.

CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 30 percent for ischemic heart disease, status post CABG, have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.3, 4.7, 4.104 Diagnostic Code (DC) 7017, 19.2.

2. The criteria for a rating of 50 percent, but no higher, for PTSD have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.3 4.7, 4.130 DC 9411, 19.2.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the Army from January 1966 to November 1967. 

In January 2019, the Agency of Original Jurisdiction (AOJ) granted service connection for PTSD and assigned a 30 percent rating. The AOJ also denied a rating higher than 30 percent for his heart disability. In a February 2019, the Veteran elected the modernized review system of the Appeals Modernization Act (AMA). 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)). He timely appealed the January 2019 rating decision to the Board of Veterans’ Appeals (Board) and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ). 

Under direct review, the Board may only consider the evidence of record as of the date of the applicable rating decision. The Veteran may submit this evidence, along with a Supplemental Claim. If the new evidence is relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Specific instructions for filing a Supplemental Claim are included with this decision.

Increased Rating

Disability evaluations are determined by the application of a schedule of ratings which is based on average impairment of earning capacity. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. 38 C.F.R. § 4.1. Separate diagnostic codes identify the various disabilities. While the Board typically considers only those factors contained wholly in the rating criteria, it is appropriate to consider factors outside the specific rating criteria when appropriate in order to best determine the level of occupational and social impairment. Mauerhan v. Principi, 16 Vet. App. 436 (2002).

Where there is a question as to which of two separate evaluations shall be applied, the higher evaluation will be assigned if the disability more closely approximates the criteria required for that particular rating. 38 C.F.R. § 4.7. When a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in favor of the Veteran. 38 C.F.R. § 4.3.

Ischemic Heart Disease

Based on the evidence of record, a rating in excess of 30 percent for the period on appeal is not warranted for the Veteran’s ischemic heart disease, status post CABG.

Ratings regarding ischemic heart disease, status post CABG, are assigned under 38 C.F.R. § 4.104, DC 7017. A rating of 30 percent or higher under DC 7017 is assigned when:

• workload of greater than 5 METs but not greater than 7 METs results in dyspnea, fatigue, angina, dizziness, or syncope; or evidence of cardiac hypertrophy or dilatation on electrocardiogram, echocardiogram, or X-ray (30 percent);

• more than one episode of acute congestive heart failure in the past year; or workload of greater than 3 METs but not greater than 5 METs results in dyspnea, fatigue, angina, dizziness, or syncope; or left ventricular dysfunction with an ejection fraction of 30 to 50 percent (60 percent); 

• for three months following hospital admission for surgery (temporary 100 percent); or

• chronic congestive heart failure, or; workload of 3 METs or less results in dyspnea, fatigue, angina, dizziness, or syncope; or left ventricular dysfunction with an ejection fraction of less than 30 percent (100 percent). 38 C.F.R. § 4.104 DC 7017. 

Metabolic Equivalent of Task, or MET, represents a physiological measure used to determine what activity is appropriate for a person. An activity level of greater than 5 METs but not greater than 7 METs is consistent with activities such as walking one flight of stairs, golfing without cart, mowing the lawn using a push mower, heavy yard work such as digging. An activity level of greater than 3 METs but not greater than 5 METs is consistent with light yard work such as weeding, mowing the lawn using a power mower, and brisk walking.

Preliminarily, the Board notes, that the Veteran underwent coronary bypass surgery in February 2015 and was properly assigned a temporary total disability rating. Therefore, the Board will only address the period on appeal outside of the assigned temporary total rating. 

First, the Veteran’s VA treatment records prior to coronary bypass surgery do not show that a rating in excess of 30 percent is warranted. Specifically, in September 2014 the Veteran’s ejection fraction was 57 percent and in early February 2015 his ejection fraction was 60 percent. The Board finds that these symptoms do not warrant a rating in excess of 30 percent. 

Next, in July 2015, after the recovery period for coronary bypass surgery, the Veteran underwent an in-person VA examination with claims file review regarding ischemic heart disease. The examiner noted that the Veteran does not have congestive heart failure. The examiner indicated that the Veteran’s ejection fraction was 55 to 60 percent. Further, the examiner conducted an interview-based METs assessment and opined that the Veteran functioned between 5 to 7 METs activity levels. The examiner noted that the Veteran regularly walked for about 25 minutes on the treadmill and experienced angina and fatigue with exercise. The examiner further noted that the METs activity level was based solely on the Veteran’s heart condition. Therefore, based on the assessment of the VA examiner, the Veteran’s symptoms do not warrant a rating in excess of 30 percent.

In June 2016, the Veteran’s private treatment records demonstrate an echocardiogram with an ejection fraction of 70 percent. In July 2016, the Veteran’s physician submitted a VA Form 21-0960A-1 Ischemic Heart Disease Disability Benefits Questionnaire, which referenced the June 2016 echocardiogram and again indicated that the Veteran’s ejection fraction was 70 percent. The Board notes that in the May 2019 appellate brief, the Veteran asserted that the physician indicated that the ejection fraction was 20 percent. The Board has reviewed this evidence and finds that the physician handwrote 70 percent and referenced the June 2016 medical records as the date of the echocardiogram relating to this finding. Moreover, the June 2016 medical records clearly state that the echocardiogram indicated an ejection fraction of 70 percent. Further, the form noted that the Veteran did not have congestive heart failure and a METs assessment was not provided. The Board finds that none of the reported symptoms in these records support a rating in excess of 30 percent.

In August 2016, the Veteran submitted a second VA Form 21-0960A-1 Ischemic Heart Disease Disability Benefits Questionnaire. The Veteran’s physician again stated that the June 2016 echocardiogram indicated an ejection fraction of 70 percent. The physician conducted an interview-based METs assessment and opined that the Veteran functioned at 3 to 5 METs activity levels. The physician noted that this assessment was not based solely on the Veteran’s heart condition but also noted that the Veteran does not have other non-cardiac medical conditions limiting the METs activity levels. 

The Board acknowledges the August 2016 VA Form 21-0960A-1 Ischemic Heart Disease Disability Benefits Questionnaire indicated that the Veteran function at 3 to 5 METs activity levels; however, the physician indicated that the METs limitation is not due solely to the heart condition. The physician also noted that the Veteran does not have non-cardiac medical conditions that limit the METs activity level but did not provide any further explanation. Thus, as the assessment was not based solely on the heart condition, the Board finds this conclusion to be of little probative value. 

In October 2016 the Veteran underwent a second in-person VA examination with claims file review regarding ischemic heart disease. The Veteran stated that since his last VA examination, he continued to experience chest pain and shortness of breath. He also stated that he felt weak, had leg swelling, and had recently been diagnosed with lung cancer. The examiner noted that the Veteran does not have congestive heart failure. The examiner indicated that the Veteran’s ejection fraction was 56 percent. The examiner conducted an interview-based METs test and opined that the Veteran functioned between 5 to 7 METs activity levels with dyspnea, fatigue, angina, and dizziness. The examiner noted that the Veteran has difficulty with prolonged walking and mild physical labor. The examiner noted that the METs activity level was based solely on the Veteran’s heart condition. The Board again finds that based on the assessment of the VA examiner, the Veteran’s symptoms do not warrant a rating in excess of 30 percent.

Additionally, the Board notes that the Veteran contends that the October 2016 VA examination is inadequate as the examiner is not a cardiologist; however, the competency of a VA examiner is presumed, absent a showing of some evidence to the contrary. Hilbert v. West, 12 Vet. App. 145 (1999). The Board finds that this examination is adequate because it was performed by a qualified examiner who conducted diagnostic testing, considered the Veteran’s reported symptoms, and provided diagnoses and assessments. The examination was performed to clinically observe and evaluate the Veteran’s reported symptoms and demonstrated level of function or dysfunction and do not require specialized training as would be necessary to determine an etiology or treatment regimen in a complex case. Other than generalized statements, the Veteran has not provided specifics to demonstrate and a specialist was required to perform the clinical observations necessary to apply the rating criteria. Barr v. Nicholson, 12 Vet. App. 303, 311 (2007).

In June 2017, the Veteran submitted a third VA Form 21-0960A-1 Ischemic Heart Disease Disability Benefits Questionnaire. The physician stated that the Veteran’s ejection fraction was 55 to 60 percent. The physician did not conduct a METs assessment but noted the Veteran’s METs activity levels are limited by his lung cancer in addition to his heart condition. The Board finds that this evidence demonstrates that the Veteran’s symptoms are adequately contemplated by the 30 percent rating criteria. 

In December 2018, the Veteran underwent an in-person VA examination with claims file review. The examiner documented that the Veteran did not have congestive heart failure and that the Veteran’s ejection fraction was 79 percent. The physician performed an interview-based METs assessment and determined that the Veteran function at 5 to 7 METs activity levels with dyspnea. The examiner indicated that the METs activity level was based solely to the Veteran’s heart condition and noted that the Veteran also has lung cancer. The Board finds that this evidence again demonstrates that the Veteran’s symptoms are adequately contemplated by the 30 percent rating criteria.

The Board notes that in the Veteran’s May 2019 appellate brief, the Veteran alleges that the December 2018 examiner lacked credibility due to a complaint with the Florida Board of Medicine and attached the complaint as evidence. As discussed above, under direct review the Board cannot review evidence that was not considered in the applicable rating decision; thus, the Board cannot consider this evidence. Moreover, the Board has reviewed the December 2018 examination, and based on the evidence appropriately available for review, the Board does not find that the evidence indicates that the December 2018 examiner lacked credibility as the appropriate assessments, diagnoses, and clinical observations were properly performed with adequate detail. 

Additionally, in the Veteran’s May 2019 appellate brief he contends that he was capable of far less than the VA examiners opined in the various METs assessments, and he contends that symptoms regarding dyspnea and fatigue demonstrated in a December 2016 VA examination for service-connected lung cancer were not properly consider. Specifically, in the December 2016 VA examination the Veteran stated that he experiences significant shortness of breath when walking from his shower to his bed. The Board has considered this evidence; however, this examination does not evaluate the Veteran’s ejection fraction or METs activity levels based solely on his heart condition, as required by the rating criteria. The Board also notes that the Veteran has significant medical issues affecting his overall health, namely service-connected lung cancer, which his private physician specifically noted affects the METs activity levels. The METs assessments conducted by the VA examiners specifically considered only the Veteran’s heart condition in forming a conclusion regarding the METs activity levels. The Board therefore finds the conclusions of the VA examiners to be of highly probative value and finds that the Veteran’s symptoms of ischemic heart disease are adequately contemplated by the 30 percent rating criteria. 

Further, the Board notes that new evidence was presented in the Veteran’s May 2019 appellate brief. The Veteran presented arguments regarding new medical sources cited in the brief, which was submitted after the date of the applicable rating decision; thus, as discussed above, the Board cannot review that evidence or address arguments based on new evidence. 

Accordingly, the Board finds that that the preponderance of the evidence is against the claim for a rating in excess of 30 percent for the period on appeal for ischemic heart disease, status post CABG, and there is no doubt to be otherwise resolved. 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Therefore, the appeal is denied.

PTSD

Based on the evidence of record, a rating in excess of 30 percent for PTSD for the period on appeal is warranted.

Throughout the entire period on appeal, the Veteran has been assigned a 30 percent rating for PTSD under 38 C.F.R. § 4.130, DC 9411. For the 30 percent rating criteria, the evidence must show occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). 38 C.F.R. § 4.130, DC 9411.

For the next-higher 50 percent rating criteria, the evidence must show occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent evaluation is contemplated for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships. Id.

A 100 percent evaluation is warranted when there is evidence of total occupational and social impairment, due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time and place; memory loss for names of close relatives, own occupation or name. Id.

The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has emphasized that the list of symptoms under a given rating is a nonexhaustive list, as indicated by the words “such as” that precede each list of symptoms. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 115 (Fed. Cir. 2013). In Vazquez-Claudio, the Federal Circuit held that a veteran may only qualify for a given disability rating under 38 C.F.R. § 4.130 by demonstrating the particular symptoms associated with that percentage or others of similar severity, frequency, and duration. Id. at 118. Other language in the decision indicates that the phrase “others of similar severity, frequency, and duration,” can be thought of as symptoms of like kind to those listed in the regulation for a given disability rating. Id. at 116.

First, in August 2016, the Veteran underwent an in-person VA examination with claims file review. The Veteran described his relationship with his wife as rough due to his PTSD related symptoms. He stated that he has a lot of fear as a result of service, he has flashbacks, and his mood is explosive. He stated that he has no friends and is not close to his children. He also stated that he does not engage in social activities and has not enjoyed anything in life since before service in the Republic of Vietnam. 

Similarly, in a December 2018 in-person VA examination with claims file review, the Veteran reported that his relationship with his wife was off and on and that they had experienced issues over the years with fighting and anger. He reported significant social withdraw stating that his relationship with his parents was never the same after he returned from service. He also stated that he lost friends from before service because he was no longer able to maintain social relationships. He stated that he has not wanted any friendships over the years and only recently took up fishing with a fellow Veteran. Further, he stated that since returning from service he has never been happy the way he was before service. He described suppressing negative emotions and stated that he abused alcohol for many years to cope with emotions related to service. Regarding employment, the Veteran stated that he previously performed physical labor, but he was unable to handle interactions with clients and was overly rough in interactions with the employees he supervised. He stated that he is no longer able to perform physical labor and is unable to perform other work due to limited skills and inability to interact with customers or fellow employees. He also described frequent nightmares and panic attacks a few times per month. Further, he stated that his memory is poor, and therefore it is hard for him to properly quantify his PTSD related symptoms. Additionally, the examiner described the Veteran’s affect as restricted, his mood as depressed, and his insight as fair to poor. The VA examiner diagnosed PTSD and opined that the Veteran has an occupational and social impairment with reduced reliability and productivity, which is analogous with the 50 percent rating criteria. 

The Board also notes that the Veteran’s VA treatment records show continued outpatient psychiatric treatment for PTSD with symptoms of depression, anxiety, flashbacks, anger, agitation, chronic nightmares, intrusive memories, hypervigilance, and sleep disturbances. 

The Board finds that the evidence of record demonstrates that a rating of 50 percent is warranted for the Veteran’s PTSD. First, the Board finds the conclusions of the December 2018 VA examiner to be of highly probative value. The examiner specifically opined that the Veteran has an occupational and social impairment with reduced reliability and productivity, which is analogous with the 50 percent rating criteria. Second, the evidence of record demonstrates that the Veteran’s symptoms are analogous with the 50 percent rating criteria, specifically restricted affect, social isolation, memory impairment, poor insight, significant depression, chronic nightmares, disturbances of motivation and mood, and severe difficulty in establishing and maintaining effective work and social relationships. Therefore, the Board finds that the Veteran’s symptoms of PTSD are properly contemplated by the 50 percent rating criteria. 

(Continued on the next page)

 

Accordingly, considering the totality of the evidence, the Board resolves all reasonable doubt in favor of the Veteran and grants a rating of 50 percent, but no higher, for the Veteran’s PTSD for the period on appeal. 38 U.S.C. 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

 

JAMES L. MARCH

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD A. Page-Nelson, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.